IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **MCB Management Services, LLC and Physician Support Services, LLC,** * | |
| * | |
| Plaintiffs/Counter-Defendants, | |
| * | |
| vs. | Civil No.:  AMD 02-CV-525 |
| * | |
| **Washington Regional Cardiac Surgery, P.C.** * | |
| | |
| Defendant/Counter-Plaintiff. * | |

\* \* \* \* \* \* \* \* \* \* \* \*
\*

**PLAINTIFFS MCB AND PSS' OPPOSITION TO
DEFENDANT'S MOTION FOR EAVE TO FILE AN AMENDED
COUNTERCLAIM AND ANSWER**

Plaintiffs MCB and PSS, through counsel, hereby submit this Opposition to Defendant's Motion for Leave to file an Amended Answer and Counterclaim and for reasons state:

1.      The Amendments sought to be made by Defendant come almost one full <u>year</u> after the deadline for amendments to the pleadings and joinder of parties-May 28, 2002-as set forth in the court's original discovery order of April 22, 2002.

2.      The Defendant has not and can not satisfy the good cause requirement of Federal Rule of Civil Procedure 16(b) and the opinions of this very court with respect to the amendments proffered, and thus the motion should be denied on that basis alone;

3.      With respect to Federal Rule of Civil Procedure 15, the Defendant's Motion is extremely dilatory; filed nearly seven months after the close of discovery, some fifteen weeks after the submission of cross-motions for summary judgment, and less than

10 days prior to the scheduled hearing regarding the already filed motions for summary judgment, and thus prejudice to the plaintiffs in this action is manifest;

4.  The potential new Counterclaim Defendants, William Beam and Charles Zorn, are NOT now represented personally by the same counsel that represent MCB and PSS in this action, and in addition to having to find counsel at this late date, will also be required to engage in another round of discovery (including presumably numerous hours of deposition time each) regarding statements each are alleged by WRCS to have made in their personal capacities.  This will result in extreme prejudice to the Plaintiffs MCB and PSS in terms of undue delay to bringing this case to trial; and

5.  For the additional reasons as set forth in the accompanying memoranda.

WHEREFORE, the Plaintiffs request that the Court deny the Defendant's Motion for Leave to File an Amended Answer and Counterclaim.

Respectfully submitted,

_____/s/_____
Gerard P. Martin (Fed. Bar # 00691)
Steven F. Wrobel (Fed. Bar # 24985)
Martin, Snyder & Bernstein, P.A.
217 East Redwood Street – Suite 2000
Baltimore, Maryland 21202
Tel. No: (410) 547-7163
Fax No: (410) 547-1605

*Attorneys for Plaintiffs,*
*MCB Management Services, LLC*
*and Physician Support Services, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Northern Division)

| | |
|---|---|
| **MCB Management Services, LLC and Physician Support Services, LLC,** | * |
| | * |
| Plaintiffs/Counter-Defendants, | |
| | * |
| vs. | Civil No.: AMD 02-CV-525 |
| | * |
| **Washington Regional Cardiac Surgery, P.C.** | * |
| | |
| Defendant/Counter-Plaintiff. | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*
\*

**MEMORANDUM IN SUPPORT OF OPPOSITION TO
DEFENDANT'S MOTION FOR LEAVE TO FILE AN AMENDED
COUNTERCLAIM AND ANSWER**

Plaintiffs, MCB and PSS, hereby submit this Memorandum in Support of its Opposition to Defendant's Motion for Leave to file an Amended Answer and Counterclaim and for reasons state:

**WRCS Cannot Show Good Cause Why It Has Waited to Amend its Original Counterclaim to this Late Date, the Motion to Amend Should Be Summarily Denied.**

In <u>Rassoull v. Maximus, Inc.</u>, 209 F.R.D. 372, (D.Md 2002) this Court issued a memorandum Opinion on Plaintiffs Motion For Leave to Amend Complaint after the deadline had passed on the original scheduling order for amendment to all pleadings and joining of parties. In <u>Rassoull</u>, the deadline had been set at May 9, 2002. Plaintiff sought to amend on August 7, 2002, approximately three months after the deadline. Plaintiff was seeking, as here, to join a party to the Complaint. Judge Chasanow noted that "Plaintiff's motion to amend her complaint after the deadline triggers both FedR.Civ.P.

15(a) governing amendments to pleadings and FedR.Civ.P. 16(b) which governs modification to a scheduling order.  Rule 15(a) states, in pertinent part, that "…leave shall be freely given when justice so requires."  According to Rule 16(b), however, "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge…"

This Court noted that while neither the Fourth Circuit nor the Supreme Court had dealt decisively with the interplay of the two Rules, another District Court's Opinion required the following two-step analysis:

> Once the scheduling order's deadline for amendment of the pleadings has passed, a moving party must satisfy the good cause standard of Rule 16(b).  If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under 15(a).
>
> Rassoull, supra, quoting Marcum v. Zimmer, 163 F.R.D. 250 (S.D.W.Va 1995); see also Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 607-608 (9th Cir. 1992)

The Maryland District Court further noted that "the Rule 16(b) analysis is less concerned with the substance of the proposed amendment.  Instead Rule 16(b)'s 'good cause' standard focuses on the timeliness of the amendment and the reasons for its tardy submission.  Because a court's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril,' a movant must demonstrate that the reasons for the tardiness of his motion justify a departure from the rules set by the court in its scheduling order."  Id., internal citations omitted.  Judge Chasanow continued:

> The primary consideration of the Rule 16(b) "good cause" standard is the diligence of the movant.  Lack of diligence and carelessness are "hallmarks of failure to meet the good cause standard." West Virginia Housing Dev. Fund v. Ocwen Technology Xchange, Inc.  200 F.R.D. 564,

2

567 (S.D. W. Va. 2001). "The focus of the inquiry is upon the moving party's reason for seeking modification. *If that party was not diligent, the inquiry should end.*" Marcum, 163 F.R.D. at 254, quoting Johnson, 975 F.2d at 609." Id. at 374. (Emphasis in original).

After conducting it's Rule 16 analysis, and having determined that Plaintiff had not addressed the timeliness of her motion to amend, and her failure to supply any reasons for the lateness of the request, the Rassoull court denied the motion and '[h]aving found that there is no good cause for modification of the Scheduling Order, the Court does not reach the Rule 15(a) analysis." Id.

In the matter before this court, WRCS cannot possibly satisfy the "good cause" prong of the Rule 16(b) test, and for that reason alone the Motion should be denied without further analysis.

The original scheduling Order in this case was issued on April 22, 2002. In that scheduling order, the deadline for moving for joinder of additional parties and amendment of pleadings was set at May 28, 2002. Pursuant to a defense request for amendment of that scheduling order, the scheduling order was amended with respect to expert disclosures, the discovery deadline (to October 31, 2002), and dispositive pretrial motions (to November 30, 2002). *There was no amendment made to the deadline for joinder of parties or amendment to the pleadings.* Thus, Defendant's request to amend the counterclaim now comes 11 ½ months after the court imposed deadline.

Pursuant to the amended scheduling order, the large majority of discovery did in fact conclude on October 31, 2002.[1] Summary judgment motions, oppositions and

---

[1] WRCS took Mr. Zorn's deposition first, and suspended it after one day in order to conclude at a later date. The conclusion of that deposition and the expert depositions are all that remain, and each side agreed to wait on these depositions until the summary judgment motions had been decided.

3

replies were submitted in November and December 2002, and briefing was complete by January 13, 2003, over four months prior to the filing of this motion.

As this Court is aware, both sides agreed to mediation in this case after the submission of summary judgment motions and mediation proceeded, albeit quickly and without success, on March 26, 2003.  One day after this Court noted a hearing on the Motions for Summary Judgment, WRCS filed its Motion for Leave to Amend the Complaint in order to add Mr. Beam and Mr. Zorn as individual defendants.

Over 350 days have passed since the deadline for amendment of the pleadings and/or joinder of additional parties.  WRCS cannot (and did not in their Motion) state a single reason why they have waited this long to file personal fraud counts against Mr. Beam and Mr. Zorn.  They have no reason.  They can only state that in accordance with Rule 15(a), leave should be freely given to them in this instance.  This brazen lack of respect for the court's scheduling order should not be awarded so easily.  In light of Judge Chasanow's decision in <u>Rassoull</u>, it would be clearly contrary to Rule 16, the court's scheduling order, and this court's prior holdings to allow the amendment in this instance.  Even statements made by WRCS that could be implied as their "good cause" reason for the delayed filing are totally without merit when viewed in comparison to WRCS' original filing.

While WRCS does not even address the Rule 16 "good cause" argument in their Motion or their Memorandum, nor does it explain the extreme lateness of this filing, or cite to any reasons why it should be permitted to avoid the court's original deadline of May 28, 2002, WRCS asserts weakly in its motion that statements by Mr. Beam and Mr. Zorn made in their deposition testimony were "newly discovered" evidence; they argued

4

that Mr. Zorn and Mr. Beam used the money MCB earned from its contract with WRCS (which WRCS equates to "stole" or "defrauded") to pay themselves and other MCB employees. This is asserted to be a major surprise to them. Despite framing these allegations as something "recently discovered," WRCS has been aware of all the needed, and of which they now complain, facts to personally sue Mr. Beam and Mr. Zorn since the outset of this action, yet intentionally chose not to, or at best neglected to do so.

The following passages are taken from WRCS' ORIGINAL complaint in this case, and demonstrate a thorough understanding of the allegations surrounding the counterclaim, and most importantly, the individuals involved in those allegations:

> ¶ 10: ***Mr. Beam proposed*** to Drs. Mispireta and Corso that, at no extra cost, the MSO would perform the same management services for WRCS that WRCS staff currently performed.
>
> ¶ 11: ***Mr. Beam represented*** to Drs. Mispireta and Corso that not only would there be no additional cost to WRCS associated with the separate MSO structure, the MSO would significantly reduce WRCS' overhead costs. ***He also represented that the MSO would not earn a profit from its services.***
>
> ¶17: ***Mr. Beam repeatedly represented*** to Drs. Mispireta and Corso that MCB would not earn a profit from its dealings with WRCS….
>
> ¶31:…***Mr. Beam continued to represent to Dr. Mispireta, Dr. Corso, and other doctors that MCB had not in the past and would not in the future earn a profit from its dealings with WRCS. Mr. Beam specifically referred*** to the payments from WRCS to MCB of WRCS' expenses as "pass through" payments of WRCS' expenses. ***Mr. Beam made these representations on more than one occasion and, in doing so, was acting within the scope of his employment with MCB.***
>
> ¶40: Eventually, ***after finally obtaining and then reviewing WRCS' overhead expenses and comparing them to the monthly payments made to MCB, WRCS discovered*** that its monthly payments to MCB did not accurately reflect WRCS' overhead expenses, but instead, contrary to the contractual agreement between WRCS and MCB, far exceeded WRCS' monthly expenses. WRCS discovered that MCB charged WRCS for items that were not overhead expenses of WRCS.

5

>¶114.: ***MCB breached its fiduciary duties by***, among other things, overcharging WRCS, wrongfully deriving a profit from the payments received by WRCS, ***wrongfully using WRCS' overpayments to fund overhead expenses of MCB including salaries of MCB personnel and executives***, and mismanaging the practice;

It is clear beyond cavil that WRCS knew at the filing of its Counterclaim that William Beam was the main actor in their allegation of fraud.[2] They repeatedly refer to Mr. Beam's alleged promises to WRCS, always clarifying his alleged actions as "on behalf of MCB." Now suddenly, WRCS wishes to amend its Counterclaim by inserting the clause "and on his own behalf" as if they did not know upon filing this Complaint that Mr. Beam was the majority owner and CEO of MCB. There is simply no justifiable excuse as to why WRCS has waited over six months since discovery ended, and over a year since filing the counterclaim to amend this lawsuit to include Mr. Beam and Mr. Zorn individually. Filing this motion on the eve of a summary judgment hearing that will decide if WRCS' original fraud allegations are even sufficient to proceed to trial only further smacks of bad faith on the part of WRCS, and certainly does not approach the good cause standard under Rule 16. WRCS has offered not a scintilla of rationale as to why they have waited so long to attempt to join parties that they have known about since – at the very latest – the outset of discovery. They certainly have not demonstrated

---

[2] The addition of Mr. Zorn appears to be nothing more than some additional "piling on" by WRCS in its Amended Counterclaim, as WRCS has added the phrase "and Mr. Zorn" to most of the allegations first attributed to Mr. Beam alone. It is undisputed that WRCS was aware that Mr. Zorn was a CPA who was acting as the CFO of MCB, prepared all the financial information, and met with Doctor Corso and WRCS' accountant every month to go over all the numbers. His role in running MCB was well-known to WRCS when they filed their counterclaim.

diligence; the very filing of this Motion for Leave to amend at this late date is indicative more of carelessness, as well as piling on. The Motion should be summarily denied.

**The Dilatory Nature of WRCS' Attempt to Amend Will Cause Great Prejudice to the Plaintiffs, MCB and PSS in Getting the Case to Trial, and Further Prejudices the Two Newly Named Defendants, William Beam and Charles Zorn.**

WRCS incorrectly, and without any basis, asserts in this filing that Mr. Beam and Mr. Zorn are individually represented by the same counsel that represent MCB and PSS. That is simply not the case. Mr. Beam and Mr. Zorn have both been deposed in this action as officers of the companies they represent, namely the two plaintiffs, MCB and PSS. The assumption that undersigned counsel will represent them as well is unfounded.

This case was of course initiated as two simple breach of contract claims by the plaintiffs MCB and PSS. Mr. Zorn and Mr. Beam did not bring any action on their own behalf. While the defendant responded to the lawsuit with a bucket-dumping counterclaim of various insidious claims against the plaintiff MCB, they did not sue Mr. Beam or Mr. Zorn individually even though, as noted, they knew then whatever they know now. To the contrary, WRCS was quite intentional, despite the myriad of allegations thrown at Mr. Beam in the counterclaim, to repeatedly assert that Mr. Beam made these alleged misrepresentations *on behalf of MCB*. See, Paragraphs 31, 50, 53, 54, 57, 60, 64, 67, 72, 75, 76, 80, 82, 85, 123, and 126 of the original Counterclaim.

The non-moving parties, MCB and PSS, will certainly be prejudiced if this Motion to for Leave to Amend is granted. Mr. Beam and Mr. Zorn – who are **not** individually represented in this Opposition – should and will be given the opportunity to employ individual counsel, and should be able to engage in re-opened discovery directed

7

specifically to their own individual perceived interests.  These interests could obviously also clash since WRCS has now decided to attribute every word allegedly spoken by Mr. Beam to Mr. Zorn as well.  They should also, no doubt, have the opportunity to interpose their own counterclaims and join additional parties such as Dr. Corso and Mr. Barsky in their own counterclaims.  The field of potential litigants could expand almost exponentially if WRCS' motion for leave to amend is granted at this late stage.  This is exactly the kind of prejudice courts consider when determining the effect on a non-moving party.  MCB and PSS have the right to have their summary judgment motions heard, and then to proceed to trial on whatever counts remain.  The court is aware that the original trial has already been postponed when the parties agreed to attempt mediation.  The defendant now seeks to engage in further delay; and it is more than mere coincidence that they seek to do so on the heels of a failed mediation.  This conduct should not be condoned by this court.  The prejudice to MCB and PSS is manifest in that an entirely new scheduling order will need to be issued, and significant delay will inevitably result.

Disposition on a Motion to Amend is within the sound discretion of the court. Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987).  On simply a Fed. R. Civ. P. 15 analysis, a court may deny a motion to amend where the movant unduly delays filing the motion and where amendment would unduly prejudice the non-moving party. Id., Burton v. Youth Services International, Inc., 176 F.R.D. 517 (D.Md 1997), a case in which a motion to amend denied where plaintiff did not move to amend until approximately 18 months after filing the original complaint.  As noted in Burton, not only would re-opening this case prejudice MCB and PSS, "it would harm the public interest by undermining the orderly administration of justice."  Burton at 521.

The Defendant has essentially asked this court to completely disregard it's own scheduling order in this case because it now wishes to widen the net of the unfounded fraud allegations first leveled 18 months ago. As Judge Motz stated in <u>Burton</u> for this Court:

> The era has passed in which courts simply ignore the damage caused by permitting endless motions to amend and the delay that such motions entail. It is now recognized that justice and the fair and efficient resolution of claims (by judicial decision or settlement among the parties) requires sound management.

Importantly, Judge Motz also commented on when motions for leave to amend should be granted:

> If a party can demonstrate that the amendments are needed only to conform the pleadings to the facts that are already fully on the record (thus obviating the need for further discovery) or that further discovery is necessary because of facts justifiably learned for the first time near the end of discovery, a judge should exercise her discretion to reopen discovery and otherwise amend the existing schedule.

WRCS cannot point to any significant facts that were learned during discovery. WRCS cites to the deposition of a former, disgruntled employee (terminated and humiliated by his departure as a former executive) as some earth-shattering new development. However, WRCS' claims remain the same, and were made in the original counterclaim at the time when they knew all the players and the role of each. This loosely-termed "corroboration" lends nothing new to the allegations. WRCS also attempts to feign surprise that Mr. Beam and Mr. Zorn – the primary operating officers of MCB and PSS – paid their salaries (as well as other company expenses) with funds received from its management fee with WRCS. Yet in paragraph 114 of the *original* complaint, WRCS alleged:

> ¶114.: ***MCB breached its fiduciary duties by***, among other things, overcharging WRCS, wrongfully deriving a profit from the payments received by WRCS,

9

> *wrongfully using WRCS' overpayments to fund overhead expenses of MCB including salaries of MCB personnel and executives,* and mismanaging the practice;

WRCS has learned nothing new that adds any substance to the fraud counts originally alleged. They do however, seek to add two new defendants who could have been named 18 months ago. These Defendants should have additional opportunity to, at the very least, determine which individual is attributed to making which alleged misrepresentation. In the context of a company being sued, it frankly did not matter if Mr. Beam or Mr. Zorn-both in positions where the statements of either could be attributed to the company-made alleged misrepresentation A, B, or C. From MCB's standpoint, they are all attributed to the company. From an individual standpoint, it is a completely new and different case, and such distinctions are paramount. Extreme delay and prejudice will result to MCB and PSS from the delay which will be necessitated by Mr. Beam and Mr. Zorn having to engage counsel, get counsel up to speed in this case, and then have counsel pursue their own discovery. WRCS' dilatoriness should not be rewarded; the motion should be denied.

WHEREFORE, MCB & PSS request that this Motion for Leave to Amend by denied.

Respectfully submitted,

_____/s/_____
Gerard P. Martin (Fed. Bar # 00691)
Steven F. Wrobel (Fed. Bar # 24985)
Martin, Snyder & Bernstein, P.A.
217 East Redwood Street – Suite 2000
Baltimore, Maryland 21202
Tel. No: (410) 547-7163
Fax No: (410) 547-1605

*Attorneys for Plaintiffs,*
*MCB Management Services, LLC*
*and Physician Support Services, LLC*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of May 2003, a copy of MCB and PSS' Opposition to Defendant's Motion for Leave to File an Amended Counterclaim and Answer and Memorandum in Support thereof, were sent electronically or by first-class mail (pursuant to the Local Rules and the rules governing electronic filing) to the following:

>Robert A. Cohen, Esquire
>Steven F. Barley, Esquire
>Hogan & Hartson, L.L.P.
>111 South Calvert Street, Suite 1600
>Baltimore, Maryland 21202

>_____/s/_____
>Steven F. Wrobel