# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (NORTHERN DIVISION)

| | |
|---|---|
| MCB MANAGEMENT SERVICES, LLC, et al., | ) |
| | ) |
| Plaintiffs/ Counterclaim Defendants, | ) |
| | ) |
| v. | )  CIVIL NO.: AMD 02 CV 525 |
| | ) |
| WASHINGTON REGIONAL CARDIAC SURGERY, P.C., | ) |
| | ) |
| Defendant/ Counterclaim Plaintiff. | ) |
| WASHINGTON REGIONAL CARDIAC SURGERY, P.C., | ) |
| | ) |
| Counterclaim Plaintiff, | ) |
| | ) |
| v. | ) |
| WILLIAM BEAM, 3090 Emerald Valley Road Ellicott City, Maryland 21042, | ) |
| | ) |
| and | ) |
| | ) |
| CHARLES ALBERT ZORN, III, 11407 Marvon Road Kingsville, Maryland 21087, | ) |
| | ) |
| Counterclaim Defendants. | ) |

## DEFENDANT'S AMENDED ANSWER TO COMPLAINT AND COUNTERCLAIMS

Defendant, Washington Regional Cardiac Surgery, P.C. (hereinafter referred to as "WRCS" or "Defendant") hereby answers the allegations set forth in the Complaint filed in this action by MCB Management Services, LLC ("MCB") and Physician Support Services, LLC ("PSS") (collectively "Plaintiffs"), and for its Answer to each and every count states and alleges the following:

## GENERAL DENIAL

Defendant generally denies the allegations in the Complaint. The Complaint fails to state a claim upon which relief can be granted or upon which relief can be granted against Defendant.

## SPECIFIC ADMISSIONS AND DENIALS

1.    Defendant admits that MCB was organized under the laws of Maryland. Defendant does not have information sufficient to admit or deny the remaining allegations contained in paragraph 1 of the Complaint and, therefore, denies the same.

2.    Defendant admits that PSS was organized under the laws of Maryland. Defendant does not have information sufficient to admit or deny the remaining allegations contained in paragraph 2 of the Complaint and, therefore, denies the same.

3.    Defendant admits the allegations contained in paragraph 3 of the Complaint.

4.     Defendant admits the allegations contained in paragraph 4 of the Complaint.

5.     Defendant admits the allegations contained in paragraph 5 of the Complaint.

6.     Defendant admits the allegations contained in paragraph 6 of the Complaint.

7.     Defendant admits the allegations contained in sentence one of paragraph 7 of the Complaint.  Defendant admits that Whelan, Barsky & Graham owned 19% of PSS and denies the remaining allegations contained in paragraph 7 of the Complaint.

8.     Defendant is without sufficient information to admit or deny the allegation that Mr. Beam initially drew a salary of $250,000 from MCB and, therefore, denies the same.  Defendant admits that Mr. Beam had received a salary of $250,000 from Defendant prior to the formation of MCB.  Defendant is without sufficient information to admit or deny the allegation that Mr. Beam's salary was transferred to MCB once MCB was formed and, therefore, denies the same. Defendant admits that prior to November 1999, MCB charged Defendant approximately $247,000 per month and that PSS charged Defendant $60,000 per month.  Defendant denies the remaining allegations contained in paragraph 8 of the Complaint.

9.    Defendant admits that in early 1999 and at other times Drs. Mispireta and Corso discussed elevating certain members of their practice to partnership, that the ownership of MCB has been discussed among the doctors at WRCS, that Mr. Beam made at least one presentation to the doctors of WRCS concerning MCB in which Mr. Beam stated that MCB did not and would not profit from WRCS, and that no other doctors who are or were part of the WRCS practice obtained an ownership interest in MCB. Defendant denies the remaining allegations contained in paragraph 9 of the Complaint.

10.    Defendant admits that at various times Defendant has had discussions with other practice groups concerning possible mergers and that at one time Mr. Beam had a written employment agreement with Defendant. The terms of the employment agreement between M. Beam and MCB speak for itself. Defendant is without sufficient information to admit or deny Mr. Beam's understandings, as alleged in sentence 5 of paragraph 10 of the Complaint and, therefore, denies the same. Defendant denies the remaining allegations contained in paragraph 10 of the Complaint.

11.    Defendant admits that Dr. Mispireta is no longer associated with Defendant's practice. Defendant denies the remaining allegations contained in paragraph 11 of the Complaint.

12.    Defendant is without sufficient information to admit or deny that in 1999 Drs. Corso and Mispireta sold their interests in MCB to Mr. Beam, that

\\\BA - 80667/0003 - 155803 v1

Mr. Beam also acquired all ownership interests in PSS, that the accounting firm's interest in PSS was redeemed by Mr. Beam in 1999, and that Mr. Beam was willing to agree to this agreement only if Dr. Corso could guarantee Mr. Beam the means to pay off the line of credit and, therefore, denies the same.  Defendant denies the remaining allegations contained in paragraph 12 of the Complaint.

13.     Defendant admits that it entered into agreements with MCB in 1998 and 1999, the terms of which speak for themselves, and admits that the monthly fee that Defendant paid to MCB was reduced to account for reduced overhead expenses. Defendant denies the remaining allegations contained in paragraph 13 of the Complaint.

14.     Defendant admits that it entered into a contract with PSS in 1999, the terms of which speak for itself.

15.     Defendant is without sufficient information to admit or deny the allegations contained in paragraph 15 of the Complaint and, therefore, denies the same.

16.     Defendant admits that it entered into agreements with MCB and PSS, the terms of which speak for themselves.  Defendant denies the remaining allegations contained in paragraph 16 of the Complaint.

17.    Defendant admits that after November 1999, the monthly payment that Defendant paid to MCB was reduced.  Defendant denies the remaining allegations contained in paragraph 17 of the Complaint.

18.    Defendant admits that the $216,000 monthly fee was paid to MCB until August 28, 2001, when Dr. Corso on behalf of WRCS notified MCB and PSS that WRCS was terminating the contracts.  Defendant denies the remaining allegations contained in paragraph 18 of the Complaint.

## COUNT I

19.    Defendant incorporates by reference its responses to the allegations of paragraphs 1 through 18 of the Complaint as if fully set forth herein.

20.    Defendant admits that it entered into an agreement with MCB dated November 1, 1999, the terms of which speak for itself.  Defendant denies the remaining allegations contained in paragraph 20 of the Complaint.

21.    Defendant denies the allegations contained in paragraph 21  of the Complaint.

22.    Defendant admits that on or about August 28, 2001, Defendant terminated its agreement with MCB.  Defendant denies the remaining allegations contained in paragraph 22 of the Complaint.

23.    Defendant denies the allegations contained in paragraph 23 of the Complaint.

Defendant denies that Plaintiff MCB is entitled to any of the relief requested in the Complaint.

## COUNT II

24.    Defendant incorporates by reference its responses to the allegations of paragraphs 1 through 23 of the Complaint as if fully set forth herein.

25.    Defendant admits that it entered into an agreement with PSS dated November 1, 1999, the terms of which speak for itself.  Defendant denies the remaining allegations contained in paragraph 25 of the Complaint.

26.    Defendant denies the allegations contained in paragraph 26 of the Complaint.

27.    Defendant admits that on or about August 28, 2001, Defendant terminated its agreement with PSS.  Defendant denies the remaining allegations contained in paragraph 27 of the Complaint.

28.    Defendant denies the allegations contained in paragraph 28 of the Complaint.

Defendant denies that Plaintiff PSS is entitled to any of the relief requested in the Complaint.

All allegations contained in the Complaint not specifically admitted above are hereby denied.

## AFFIRMATIVE DEFENSES

1.      The Complaint fails to state a claim upon which relief can be granted, or fails to state a claim upon which relief can be granted against WRCS.

2.      Plaintiffs' claims are barred by their own breach of contract.

3.      Plaintiffs' claims are barred by anticipatory breach of contract.

4.      Plaintiffs' claims are barred by legal excuse.

5.      Plaintiffs' claims are barred by waiver.

6.      Plaintiffs' claims are barred by failure of consideration.

7.      Plaintiffs' claims are barred by the applicable statute of limitations.

8.      Plaintiffs' claims are barred by estoppel.

9.      Plaintiffs' claims are barred by unclean hands and/or Plaintiffs' own fraudulent conduct.

10.     Plaintiffs' claims are barred by laches.

11.     Plaintiffs' claims are barred, in whole or in part, by Plaintiffs' failure to mitigate damages.

12.     Plaintiffs' claims are barred, in whole or in part, by absence of damages.

\\\BA - 80667/0003 - 155803 v1

13.     Plaintiffs' claims are subject to offset.

14.     Plaintiffs' claims are or may be barred, in whole or in part, by any other defenses found to be factually merited during the course of discovery in, or trial of, this action.

WHEREFORE, having fully answered the Plaintiffs' Complaint, WRCS prays that the Complaint be dismissed in its entirety, with prejudice, and that WRCS be awarded its fees and costs, including reasonable attorneys' fees, and any further relief appropriate under the circumstances.

## COUNTERCLAIMS

Having fully answered the Complaint, WRCS for its Counterclaims against MCB and PSS**, PSS, Mr. William Beam ("Mr. Beam") and Mr. Charles Albert Zorn, III ("Mr. Zorn")**, states and alleges the following:

## PARTIES

1.    WRCS is a  Washington, D.C. corporation with its principal place of business in Washington, D.C.

2.    MCB is a limited liability company organized under the laws of Maryland with its principal place of business in Towson, Maryland.

3.    PSS is a limited liability company organized under the laws of Maryland with its principal place of business in Towson, Maryland.

**4.    Mr. Beam is an individual residing in Ellicott City, Maryland and is a citizen of Maryland.**

**5.    Mr. Zorn is an individual residing in Kingsville, Maryland and is a citizen of Maryland.**

## JURISDICTION

**6.**    4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states, and pursuant to 28 U.S.C. § 1367.

## VENUE

**7.** ~~5.~~ Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the counterclaim defendants reside in this district and because a substantial part of the events or omissions giving rise to the claim occurred.

## THE FORMATION OF MCB AND PSS

**8.** ~~6.~~ Counterclaimant WRCS (formerly known as Drs. Garcia, Mispireta, Corso, Pfister and Associates, P.C., or "GMCPA") is a practice of cardiac surgeons. WRCS and its predecessor practices have been internationally recognized as leaders in the area of cardiac surgery for over twenty-five years.

**9.** ~~7.~~ WRCS hired and employed Mr. William Beam ("Mr. Beam") as its practice manager in the mid-1990s. Mr. Beam had previously been an executive at Union Memorial Hospital in Baltimore, Maryland. Upon being hired as an employee of WRCS, Mr. Beam's principal responsibility was to manage the WRCS practice, including WRCS's in-house management and billing staff. Mr. Beam claimed to be an expert in the management of health care organizations who could reduce expenses by applying his knowledge of health care management.

**10.** ~~8.~~ Mr. Beam entered into an employment agreement with WRCS. Pursuant to that agreement, Mr. Beam was paid $250,000 per year, as well as certain other benefits.

**11.** ~~9.~~ In the late 1990s, Mr. Beam suggested to Dr. Louis Mispireta and Dr. Paul J. Corso, two of the principals of WRCS, that they separate WRCS's

in-house management and billing staff and form a new management services organization ("MSO"). Mr. Beam suggested that the MSO be separately incorporated, that WRCS staff become employees of the MSO, and that the owners of the MSO be Mr. Beam and some of the doctors of WRCS. Mr. Beam further suggested that he become the chief executive of the MSO.

**12.** ~~10.~~ Mr. Beam proposed to Drs. Mispireta and Corso that, at no extra cost, the MSO would perform the same management services for WRCS that WRCS staff currently performed. In addition, his plan was to have the MSO obtain contracts to manage other medical practices in the Baltimore and Washington D.C. areas.

**13.** ~~11.~~ Mr. Beam represented to Drs. Mispireta and Corso that not only would there be no additional cost to WRCS associated with the separate MSO structure, the MSO would significantly reduce WRCS's overhead costs. He also represented that the MSO would not earn a profit from its services for WRCS. Instead, he represented that the MSO would use of the highly regarded WRCS name and reputation to obtain management contracts with other medical practices, from which WRCS would profit. Indeed, Mr. Beam represented that not only would the MSO not earn a profit from its contract with WRCS, but that the MSO would take advantage of economies of scale and management expertise to *lower* the cost of managing the WRCS practice. At the same time, the owners of the MSO, including Mr. Beam, would, under the business plan articulated by Mr. Beam, earn significant

profits from the future management contracts that Mr. Beam said would be entered into between MCB and other medical practices.

**14.**    ~~12.~~ In reliance on these representations by Mr. Beam, Dr. Mispireta and Dr. Corso agreed to become part owners of a new MSO, which would, among other things, employ much of WRCS's staff.

**15.**    ~~13.~~ To carry out Mr. Beam's plans, MCB was formed.  When MCB was formed, Dr. Mispireta owned 37.5% of MCB, Dr. Corso owned 37.5% of MCB, and Mr. Beam owned the remaining 25% of MCB.

**16.**    ~~14.~~ Mr. Beam became the Chief Executive Officer of MCB and many members of WRCS's staff became employees of MCB.  Drs. Mispireta and Corso (but not Mr. Beam) personally guaranteed a $500,000 line of credit.  Drs. Mispireta and Corso  (but not Mr. Beam) also contributed capital to MCB.

**17.**    ~~15.~~ To provide billing services to the medical practices that MCB would manage (including WRCS), MCB acquired PSS.  MCB owned 81% of PSS and the accounting firm used by both WRCS and MCB, Whelan Barsky & Graham, owned the remaining 19%.

**18.**    ~~16.~~ Both before and continuing after MCB was formed, Dr. Mispireta and Dr. Corso believed, in keeping with the original plan and proposal described by Mr. Beam and frequently rearticulated by him, that MCB would not profit from its dealings with WRCS.  Because Drs. Mispireta and Corso were owners

of MCB, they did not want to earn a profit, through MCB, from their colleagues at WRCS. In addition, Drs. Mispireta and Corso did not want WRCS to pay more to MCB in management fees than it had cost WRCS to manage the practice itself before MCB was formed, and hoped that it would pay less.

**19.** ~~17.~~ Mr. Beam repeatedly represented to Drs. Mispireta and Corso that MCB would not earn a profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, and that MCB would earn a profit by marketing itself using the WRCS name to obtain profitable contracts to manage other practices. Drs. Mispireta and Corso relied on these repeated representations in agreeing to the separate MSO structure and the creation of MCB as well as its contract with WRCS.

## THE 1998 AGREEMENT BETWEEN WRCS AND MCB

**20.** ~~18.~~ After the formation of MCB, WRCS and MCB entered into a "Consulting Agreement" dated January 2, 1998 (the "1998 Agreement"). Pursuant to the 1998 Agreement, MCB would provide "all administrative, operational, managed care marketing and contracting, and practice management consulting necessary for the effective management" of WRCS.

**21.** ~~19.~~ In return for the management services, WRCS paid to MCB "the total dollar amount of 1997 overhead expense." "Overhead expense" was defined in the 1998 Agreement as "all expenses of GMCP [WRCS's former name] other than

physician compensation." Thus, pursuant to the 1998 Agreement, WRCS simply

paid to MCB the same amount that WRCS had paid in overhead expenses during the

prior year. This provision carried out the intent of the parties that the agreement

with MCB would cost WRCS no more than it had cost the practice to manage itself in

the prior year and that MCB would not profit from its contractual relationship with

WRCS.

   **22.** ~~20.~~ Pursuant to the 1998 Agreement, in each succeeding year,

WRCS would pay to MCB an amount equal to WRCS's overhead expenses for the

prior year.

   **23.** ~~21.~~ The 1998 Agreement gave the parties an opportunity to share

in the expected savings that would result from MCB managing of the practice. To the

extent that MCB reduced WRCS's overhead expenses in the years following 1997,

those savings would be shared between WRCS and MCB. Savings in 1998 would be

divided evenly, MCB would ~~receive~~**return** 60% of any savings in 1999, and MCB

would ~~receive~~**return** 80% of any savings in 2000.

   **24.** ~~22.~~ The 1998 Agreement also contained the following provision

regarding MCB's loyalty to WRCS:

> *Strict Loyalty.* MCB shall avoid all circumstances and actions
> which reasonably would place MCB in a position of divided
> loyalty with respect to his [sic] obligations under this contract.

**25.** ~~23.~~ The 1998 Agreement between WRCS and MCB was a pass through agreement pursuant to which WRCS would make monthly payments to MCB sufficient to pay for WRCS's monthly overhead expenses. MCB would not retain a profit from the payment or use the payment for any purpose other than to pay WRCS's monthly overhead expenses. To the degree that MCB lowered WRCS's monthly expenses, the entities would share those savings to account for the reduced expenses.

**26.** ~~24.~~ For the year 1998 and for the first ten months of 1999, WRCS paid a monthly fee to MCB.

## MR. BEAM PERSUADES DRS. MISPIRETA AND CORSO TO PURPORT TO TRANSFER THEIR INTERESTS IN MCB AND PSS TO MR. BEAM

**27.** ~~25.~~ In mid- to late- 1999, Mr. Beam approached Dr. Mispireta and Dr. Corso advising them of an alleged problem with their ownership interest in MCB and PSS. Mr. Beam told Dr. Mispireta and Dr. Corso that he (Mr. Beam) had spoken with an attorney who had told him (Mr. Beam) that, pursuant to a federal statute commonly referred to as the "Stark Amendments," Dr. Mispireta and Dr. Corso were prohibited from owning an interest in MCB and PSS. Mr. Beam told Dr. Mispireta and Dr. Corso that they should transfer their interests in MCB and PSS to him.

**28.** ~~26.~~ Relying upon the statements made by Mr. Beam about the purported problems associated with their ownership of an interest in MCB, upon information and belief, Dr. Mispireta and Dr. Corso purported to transfer their interests in MCB to Mr. Beam in 1999.

**29.**  27. After Dr. Mispireta and Dr. Corso purportedly transferred their ownership interests in MCB to Mr. Beam, they never received a return of their capital investments in MCB.

**30.**  28. When Mr. Beam purported to acquire Dr. Mispireta's and Dr. Corso's ownership interests in MCB, Mr. Beam also purported to acquire all of the outstanding interests in PSS.

**31.    Mr. Beam subsequently transferred a portion of his interest in MCB to Mr. Zorn and a third individual.  Together, Mr. Beam and Mr. Zorn owned and have owned since November 1999, a combined 90% interest in MCB.**

**32.**  29. After the purported transfer of their interests in MCB to Mr. Beam, Dr. Mispireta and Dr. Corso learned that their ownership interests in MCB and PSS were not prohibited by the Stark Amendments.  Upon information and belief, Mr. Beam was never told by an attorney that the doctors' ownership interests were prohibited by the Stark Amendments.

## THE 1999 AGREEMENTS BETWEEN WRCS, MCB, AND PSS

**33.**  30. At approximately the same time that Mr. Beam purported to acquire the sole interest in MCB and PSS, both entities entered into new agreements with WRCS.  WRCS and MCB entered into a new "Management Agreement" that replaced the 1998 Agreement, and WRCS entered into an agreement with PSS.  Both

new agreements were dated November 1, 1999.  The November 1, 1999 agreement

between MCB and WRCS will be referred to herein as the "1999 Agreement."

**34.**    ~~31.~~ Both before and after WRCS entered into the new agreements

with MCB and PSS in 1999, Mr. Beam continued to represent to Dr. Mispireta, Dr.

Corso, and other doctors that MCB had not in the past and would not in the future

earn a profit from its dealings with WRCS.  Mr. Beam specifically referred to the

payments from WRCS to MCB as "pass through" payments of WRCS's expenses.  Mr.

~~Beam~~**Zorn made similar representations to WRCS.  Mr. Beam and Mr. Zorn**

made these representations on more than one occasion and, in doing so, ~~was~~**were**

acting within the scope of his employment with MCB.

**35.**    ~~32.~~ The 1999 Agreement confirms that the payments from WRCS

to MCB were merely pass through payments of WRCS's overhead expenses.

Specifically, the 1999 Agreement provides:

> ***Consideration and Payment.***  As consideration for such
> services, GMCP shall pay MCB the total dollar amount of
> $220,000 monthly <u>to pay for GMCP overhead expense</u>.  Overhead
> expense is defined as all expenses of GMCP (See Exhibit I) other
> than physician compensation, physician fringe benefits –
> includes healthcare, pension, etc., – donations, travel and
> entertainment, legal and accounting expenses, personal supplies,
> interest, depreciation and capital equipment."

(Exh. A).  (Emphasis added.)  (GMCP is the former name of WRCS.)  The "Exhibit I"

referenced in the paragraph and attached to the agreement listed a variety of

overhead expenses, from automobile mileage to utilities expenses.

**36.**  33. Although WRCS previously paid $247,000 per month to MCB, the 1999 Agreement reduced the monthly payments to account for WRCS's lower overhead expenses.  This reduction again reflected the parties' intent that the payments merely be pass-through payments of WRCS's overhead expenses.

**37.**  34. The 1999 Agreement maintained the requirement that MCB owe a strict duty of loyalty to WRCS.

**38.**  35. After the execution of the 1999 Agreement with MCB, WRCS began to make the monthly payments to MCB.  The payments were later reduced because of reductions in WRCS's overhead expenses.  This reduction in the monthly payment amount was in keeping with representations by Mr. Beam **and Mr. Zorn**, the language of the 1999 Agreement, and the intent of the parties that the monthly payments were meant to be pass through payments of WRCS's overhead expenses.

**39.**  36. The monthly payment subsequently was further reduced to reflect further reductions in WRCS's overhead expenses.

## WRCS DISCOVERS FINANCIAL IMPROPRIETY AND MISMANAGEMENT BY MCB AND PSS

**40.**  37. Mr. Beam's promises as to the profitability of managing medical practices and the efficiencies and expertise that would benefit WRCS never materialized.  MCB's work for WRCS was substandard and professionally negligent. Mr. Beam became distracted by other projects and withdrew from the active

management of the business of WRCS for extended periods of time**, leaving Mr. Zorn responsible for daily management of WRCS's practice**.

**41.** ~~38.~~ Historically, MCB**, Mr. Beam and Mr. Zorn** did not provide WRCS with detailed information regarding ~~its~~**the** ~~allocation~~**use** of WRCS's monthly ~~payment and WRCS's expenses~~**payments**.  Likewise, ~~MCB~~**they** did not provide WRCS other documentation regarding ~~its~~ **the** management of the practice, such as explanations of benefits, which describe reasons for payment or non-payments of WRCS bills.  ~~WRCS relied on MCB acting in compliance with its representations, the parties' agreements and the strict duty of loyalty created in the 1999 Agreement between the parties.~~

**42.    In particular, Mr. Zorn, provided monthly financial presentations to WRCS that intentionally did not disclose how MCB, PSS , Mr. Beam and Mr. Zorn used WRCS's monthly payments.**

**43.    In addition, during performance of the contract between MCB and WRCS, Mr. Beam and Mr. Zorn personally provided WRCS with financial information that WRCS now knows to have been intentionally false and designed to mislead WRCS into believing that MCB was not deriving a profit from WRCS.  The financial statements misled WRCS into believing that Mr. Beam and Mr. Zorn were using WRCS's monthly payments only to pay WRCS's overhead expenses when, in fact, large portions of the payments were used for other payments, including Mr.**

**Beam's and Mr. Zorn's personal retention for themselves of hundreds of thousands of dollars from WRCS's payments.**

**44.    Mr. Beam and Mr. Zorn also intentionally made misleading and false statements to WRCS, orally and by e-mail, that MCB was not deriving a profit from WRCS, that MCB, Mr. Beam and Mr. Zorn only used WRCS's monthly payments to pay WRCS's overhead expenses, and that all savings from reductions in WRCS's overhead expenses were being returned to WRCS.  WRCS now knows that these statements were intentionally false and misleading.**

**45.    WRCS relied on MCB, Mr. Beam and Mr. Zorn to act in compliance with their representations, the parties' agreements and the strict duty of loyalty created in the 1999 Agreement between the parties.  In providing WRCS with intentionally false and misleading information, MCB, Mr. Beam and Mr. Zorn each violated the parties' agreements and their representations to WRCS and engaged in fraud.**

**46.**    39. In mid- to late 2000, WRCS began to seek more specific information concerning the allocation of the monthly payment from WRCS to MCB and the nature of the expenses for which those payments were being made.  Despite its request in this regard, WRCS had difficulty obtaining this information from MCB**, Mr. Beam and Mr. Zorn**.  The requested information was not forthcoming for months.

47.     Indeed, Mr. Beam and Mr. Zorn were very reluctant to disclose to WRCS how MCB, Mr. Beam and Mr. Zorn were using WRCS's payments.  When the request for detailed information was communicated to Mr. Zorn, Mr. Zorn immediately reported the request to Mr. Beam.  Mr. Beam then called two of the WRCS doctors' administrative assistants and threatened the WRCS doctor who had requested the information by saying, among other things, that the doctor "better watch his step" and that the doctor was "getting too big for his britches" and "he better not be sticking his nose in places where it doesn't  belong."

48.     Mr. Beam's threats were consistent with what WRCS now knows to have been Mr. Beam's attitude and animus toward WRCS's doctors, which was summed up by Mr. Beam in relating his feelings to PSS's former President and minority owner: "f**k the docs before they f**k you."

49.     Mr. Beam and Mr. Zorn personally benefited from their wrongful acts, their intentionally false and misleading representations and financial statements, and from the wrongful use of WRCS's payments under the agreement between WRCS and MCB.  Mr. Beam and Mr. Zorn personally benefited by wrongly using WRCS's payments to award themselves tremendous salaries, bonuses, distributions, and fringe benefits.

**50.** 40. Eventually, after finally obtaining **even though Mr. Beam and Mr. Zorn never fully revealed their use of WRCS's payments, WRCS finally obtained** and then reviewing **reviewed** WRCS's overhead expenses and comparing **compared** them to the monthly payments made to MCB, . WRCS discovered that its monthly payments to MCB did not accurately reflect WRCS's overhead expenses, but instead, contrary to the contractual agreement between WRCS and MCB **and contrary to representations made by Mr. Beam and Mr. Zorn**, far exceeded WRCS's monthly expenses.  WRCS discovered that MCB charged WRCS for items that were not overhead expenses of WRCS.

**51.** 41. In addition, upon information and belief, MCB did not properly account for certain payments received from the Washington Hospital Center ("WHC").  WHC, with which WRCS was affiliated, paid for a portion of the salaries of certain WRCS staff because they also performed duties for WHC.  WRCS discovered that MCB submitted inflated salary information to WHC.

**52.** 42. Despite the clear contract language and repeated representations by Mr. Beam **and Mr. Zorn** that MCB would not profit from its dealings with WRCS, and despite MCB's strict duty of loyalty to WRCS created by the parties' agreements, WRCS learned that MCB was using portions of WRCS's payments for purposes other than paying WRCS's overhead expense**, including the use of large portions of these payments for Mr. Beam's and Mr. Zorn's personal benefit**.

**53.** 43. Upon information and belief, MCB had not been successful in obtaining more lucrative contracts to manage other medical practices as it had planned and Mr. Beam's vision that MCB would earn significant profits from managing other practices never materialized.

**54.** 44. **After discovering MCB's, Mr. Beam's and Mr. Zorn's misuse of WRCS's payments,** WRCS also reviewed the billing services provided by PSS. WRCS learned that PSS was mishandling WRCS's billing. PSS's failures included, but were not limited to, the following:

a.      PSS did not conduct adequate follow up after issuing bills for services rendered by WRCS. There was no indication that PSS or MCB ever studied collection rates, reviewed the reasons for payment denial, or otherwise managed patient accounts. Little or no effort was made to determine whether WRCS was collecting an appropriate percentage of its accounts receivable, whether there was a particular cause of any shortfall in collections, or whether any change in procedures or policies could have increased collections whether or not there was a shortfall.

b.      PSS deposited some payments received from insurers into a general account when it received a payment for WRCS that was not clearly marked for a particular patient. Proper procedure would have been to conduct an investigation to determine which account should be credited with the payment. As a

result of PSS's failure to properly allocate these payments, WRCS's "unaccounted for" account was excessive.

        c.     PSS utilized a computer system for WRCS's patient accounts that was accessed by staff and which contained patient information.  WRCS discovered that PSS's computer system allowed all of PSS's clients – including other medical practices – to access the patient accounts of <u>all</u> PSS clients.  In other words, other medical practices could access account information for WRCS's patients, a situation that raised patient privacy and confidentiality concerns and also violated the terms of WRCS's agreement with PSS, which required that PSS treat the accounts as confidential and not reveal them to any other party.

        d.     PSS had, without authorization, "zeroed out" at least one account and possibly others with a sizeable balance due despite that no payment had been received.  PSS did so without authorization from WRCS and without notifying WRCS.

**55.**    ~~45.~~ WRCS also learned that it was paying PSS more than the market rate for billing services.

**56.**    ~~46.~~ In addition to the above deficiencies regarding billing, the review also uncovered areas in which both PSS and MCB had jointly mismanaged the practice, including the following:

> a.    Neither PSS nor MCB compared payments received to WRCS's managed care contracts to determine whether WRCS was receiving adequate reimbursement under these contracts.

> b.    Neither PSS nor MCB adequately managed daily account activity at WRCS, such as collection of patient co-payments.

> c.    Employee morale had plummeted since MCB took over management of the practice.

### WRCS TERMINATES THE AGREEMENTS WITH MCB AND PSS

**57.**    47. WRCS discovered improprieties and mismanagement by both MCB**, PSS, Mr. Beam** and PSS**Mr. Zorn**.  MCB**, Mr. Beam and Mr. Zorn** overbilled WRCS for overhead expenses and retained WRCS payments well in excess of WRCS's overhead expenses.  WRCS also learned that MCB**, PSS, Mr. Bean** and PSS**Mr. Zorn** mismanaged the management of the practice and its billing.

**58.**    48. WRCS decided to terminate its contracts with both entities. On or about August 28, 2001, on behalf of WRCS, Dr. Corso provided letters to MCB and PSS terminating their contracts with WRCS.

### COUNT I
### (Fraud in the Inducement – Rescission)
### (Against MCB and PSS)

**59.** 49. Defendant/Counterclaimant WRCS incorporates the allegations contained in paragraphs 1 through 48**58** of its counterclaims as if fully set forth herein.

**60.** 50. Mr. Beam, on behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices.

**61.** 51. Mr. Beam also represented that an attorney had told Mr. Beam that Dr. Mispireta and Dr. Corso were prohibited from owning interests in MCB and PSS because of federal statutes known as the Stark Amendments.

**62.** 52. When Mr. Beam made the representations, he knew that they were false or made them with reckless disregard as to their falsity.

**63.** 53. Mr. Beam made these representations, on behalf of MCB and PSS, to induce WRCS to enter into new management and billing agreements with MCB and PSS.

**64.** ~~54.~~ WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on behalf of MCB and PSS.

**65.** ~~55.~~ Upon learning that the above representations were fraudulent, misleading, and incorrect, WRCS promptly acted to terminate the agreements, refused to accept further services pursuant to the agreements and, to the extent possible, return the parties to the positions that they would have occupied had the agreements never existed. WRCS did not treat the agreement as a continuing obligation.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendants MCB and PSS and seeks an Order rescinding the November 1999 agreements between the parties and returning the parties to their positions prior to the formation of the agreements.

## <u>COUNT II</u>
**(Fraud in the Inducement – Money Damages)**
**(Against MCB, PSS and ~~PSS~~Mr. Beam)**

**66.** ~~56.~~ Defendant/Counterclaimant WRCS incorporates the allegations contained in paragraphs 1 through ~~55~~**65** of its counterclaims as if fully set forth herein.

**67.** ~~57.~~ Mr. Beam, on **his own behalf and on** behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its

dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices.

**68.** 58. Mr. Beam also represented that an attorney told Mr. Beam that Dr. Mispireta and Dr. Corso were prohibited from owning interests in MCB and PSS because of federal statutes known as the Stark Amendments.

**69.** 59. When Mr. Beam made the representations, he knew that they were false or made them with reckless disregard as to their falsity.

**70.** 60. Mr. Beam made these representations, on **his own behalf and on** behalf of MCB and PSS, to induce WRCS to enter into new management and billing agreements with MCB and PSS.

**71.** 61. WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on **his own behalf and on** behalf of MCB and PSS.

**72.** 62. WRCS suffered damages as a result of relying on the misrepresentations made by Mr. Beam **on his own behalf and** on behalf of MCB and PSS.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendants MCB and**,** PSS **and Mr. Beam** for compensatory damages in an amount to be determined at trial, plus pre- and post-judgment interest, costs, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT III
### (Negligent Misrepresentation – Rescission)
### (Against MCB and PSS)

**73.** 63. Defendant/Counterclaimant WRCS incorporates the allegations contained in paragraphs 1 through 62**72** of its counterclaims as if fully set forth herein.

**74.** 64. Mr. Beam, on behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices.

**75.** 65. Mr. Beam also represented that an attorney had told Mr. Beam that Dr. Mispireta and Dr. Corso were prohibited from owning interests in MCB and PSS because of federal statutes known as the Stark Amendments.

**76.** 66. Mr. Beam, MCB, and PSS owed a duty of care to Dr. Mispireta, Dr. Corso, and WRCS to transmit accurate information and not to provide false and misleading information.

**77.** 67. The statements by Mr. Beam, on behalf of MCB and PSS, were false when they were made.  Mr. Beam, on behalf of MCB and PSS, was negligent in making the false statements.

**78.** 68. Mr. Beam made these representations, on behalf of MCB and PSS, to induce WRCS to enter into new management and billing agreements with MCB and PSS.

**79.** 69. WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on behalf of MCB and PSS.

**80.** 70. Upon learning that the above representations were fraudulent, misleading, or incorrect, WRCS promptly acted to terminate the agreements, refused to accept further services pursuant to the agreements and, to the extent possible, return the parties to they would have occupied had the contract never existed.  WRCS did not treat the agreement as a continuing obligation.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendants MCB and PSS and seeks an Order

rescinding the November 1999 agreements between the parties and returning the

parties to their positions prior to the formation of the agreements.

<u>COUNT IV</u>
**(Negligent Misrepresentation – Money Damages)**
**(Against MCB, PSS and** ~~PSS~~**Mr. Beam)**

**81.**    ~~71.~~ Defendant/Counterclaimant WRCS incorporates the

allegations contained in paragraphs 1 through ~~70~~**80** of its counterclaims as if fully set

forth herein.

**82.**    ~~72.~~ Mr. Beam, on **<u>his own behalf and on</u>** behalf of MCB and

PSS and acting within the scope of his employment with and ownership of those

entities, repeatedly represented to WRCS that MCB would not profit from its

dealings with WRCS, that the management services provided by MCB to WRCS

would not cost WRCS any more than it had cost WRCS to manage itself, that the

payments by WRCS to MCB would be in an amount necessary only to pay WRCS's

overhead expenses, and that MCB would earn a profit, if at all, by marketing itself

using the WRCS name to obtain more lucrative contracts to manage other practices.

**83.**    ~~73.~~ Mr. Beam also represented that an attorney had told Mr.

Beam that Dr. Mispireta and Dr. Corso were prohibited from owning interests in

MCB and PSS because of federal statutes known as the Stark Amendments.

**84.** ~~74.~~ Mr. Beam, MCB, and PSS owed a duty of care to Dr. Mispireta, Dr. Corso, and WRCS to transmit accurate information and not to transmit false and inaccurate information.

**85.** ~~75.~~ The statements by Mr. Beam, on **his own behalf and on** behalf of MCB and PSS were false when they were made. Mr. Beam, on **his own behalf and on** behalf of MCB and PSS, was negligent in making the false statements.

**86.** ~~76.~~ Mr. Beam made these representations, **on his own behalf and** on behalf of MCB and PSS, to induce WRCS to enter into management and billing agreements with MCB and PSS.

**87.** ~~77.~~ WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on **his own behalf and on** behalf of MCB and PSS.

**88.** ~~78.~~ WRCS suffered damages as a result of relying on the misrepresentations made by Mr. Beam on **his own behalf and on** behalf of MCB and PSS.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendants MCB**, PSS** and ~~PSS~~**Mr. Beam** for compensatory damages in an amount to be determined at trial, plus pre- and

post-judgment interest, costs, attorneys fees, and such other relief as the Court

deems appropriate.

## COUNT V
### (Fraud and Deceit)
### (Against MCB, PSS, Mr. Beam and ~~PSS~~Mr. Zorn)

**89.** ~~79.~~ Defendant/Counterclaimant WRCS incorporates the

allegations contained in paragraphs 1 through ~~78~~**88** of its counterclaims as if fully set

forth herein.

**90.** ~~80.~~ Mr. Beam **and Mr. Zorn**, on **their own behalf and on**

behalf of MCB and PSS and acting within the scope of ~~his~~**their** employment with and

ownership of those entities, repeatedly represented to WRCS that MCB would not

profit from its dealings with WRCS, that the management services provided by MCB

to WRCS would not cost WRCS any more than it had cost WRCS to manage itself,

that the payments by WRCS to MCB would be in an amount necessary only to pay

WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing

itself using the WRCS name to obtain more lucrative contracts to manage other

practices.

**91.** ~~81.~~ When Mr. Beam **and Mr. Zorn** made the representations,

~~he~~**they** knew that they were false or made them with reckless disregard as to their

falsity.

**92.** ~~82.~~ Mr. Beam **and Mr. Zorn** made these representations, on

**their own behalf and on** behalf of MCB and PSS, to induce WRCS to enter into

~~new~~**and continue to perform** management and billing agreements with MCB and PSS.

**93.** ~~83.~~ WRCS, in entering into **and performing** management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam **and Mr. Zorn on their own behalf and** on behalf of MCB and PSS.

**94.** ~~84.~~ In direct contrast to the representations made by Mr. Beam **and Mr. Zorn on their own behalf and** on behalf of MCB and PSS, MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** wrongfully profited from their contracts with WRCS and wrongfully charged and retained payments made by WRCS well in excess of WRCS's overhead expenses.

**95.    Mr. Beam and Mr. Zorn provided knowingly misleading information to WRCS to perpetuate and continue their fraud.**

**96.** ~~85.~~ WRCS suffered damages as a result of relying on the misrepresentations made by Mr. Beam **and Mr. Zorn on their own behalf and** on behalf of MCB and PSS.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendants MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** for compensatory damages in an amount to be determined at trial, plus pre-

and post-judgment interest, costs, attorneys fees, and such other relief as the Court

deems appropriate.

**COUNT VI**
**(Breach of Contract)**
**(Against MCB)**

**97.** 86. Defendant/Counterclaimant WRCS incorporates the

allegations contained in paragraphs 1 through 85**96** of its counterclaims as if fully set

forth herein.

**98.** 87. On or about November 1, 1999, WRCS entered into an

agreement with MCB whereby MCB agreed, among other things, to provide all

administrative, operational, managed care marketing and contracting, and practice

management consulting necessary for the effective management of WRCS.  MCB also

contracted to provide WRCS with a duty of strict loyalty.  In return, WRCS agreed to

make monthly payments to MCB to pay for WRCS's overhead expenses.

**99.** 88. By mutual agreement of the parties, the monthly payment

was reduced on two occasions to reflect reductions in WRCS's overhead expenses.

**100.** 89. WRCS performed all of its material obligations under the

November 1, 1999 contract with MCB.

**101.** 90. MCB breached the 1999 Agreement by, among other things:

a.     retaining the entirety of WRCS's payments to MCB to derive a profit or to use WRCS's payments to pay overhead and other expenses of MCB;

b.     failing to compare payments received to WRCS's managed care contracts to determine whether WRCS was receiving adequate reimbursement under these contracts;

c.     failing to abide by its contractual duty of strict loyalty; and,

d.     failing to adequately manage daily account activity at WRCS.

**102.**   91. WRCS has incurred a loss as a result of the breaches contract by MCB.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendant MCB in an amount to be determined at trial, plus pre- and post-judgment interest, costs, attorneys fees, and such other relief as the Court deems appropriate.

**COUNT VII**
**(Breach of Contract)**
**(Against PSS)**

**103.** ~~92.~~ Defendant/Counterclaimant WRCS incorporates the allegations contained in paragraphs 1 through ~~91~~**102** of its counterclaims as if fully set forth herein.

**104.** ~~93.~~ On or about November 1, 1999, WRCS entered into an agreement with PSS whereby PSS agreed, among other things, to be the exclusive billing agent for WRCS and, on behalf of WRCS, submit all claims for professional services, answer inquiries regarding billing matters in a prompt and courteous manner, perform collection follow-up, and provide WRCS with management reports regarding collections and accounts receivable.

**105.** ~~94.~~ In exchange for the above services, WRCS was to make monthly payments to PSS.

**106.** ~~95.~~ WRCS performed all of its material obligations under the November 1, 1999 contract with PSS.

**107.** ~~96.~~ PSS breached the contract by, among other things:

    a.    failing to conduct adequate follow up after issuing bills for services rendered by WRCS;

    b.    depositing certain payments into a general account instead of determining which account should be credited with the payments;

c.    utilizing a computer system that provided access to WRCS's patient accounts to other medical practices;

d.    "zeroing out" one or more accounts with a sizeable balance due without authorization from or notice to WRCS, despite the fact that no payment had been received;

e.    billing WRCS more than the market rate for billing services;

f.    failing to compare payments received from WRCS's managed care contracts to determine whether WRCS was receiving adequate reimbursement under these contracts;

g.    failing to provide adequate management reports regarding collections and accounts receivable; and,

h.    failing to adequately manage daily account activity at WRCS.

**108.** ~~97.~~ WRCS has incurred a loss as a result of the breach of contact by PSS.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendant PSS in an amount to be determined at trial, plus pre- and post-judgment interest, costs, attorneys fees, and such other relief as the Court deems appropriate.

## COUNT VIII
**(Negligence)**
**(Against MCB)**

**109.**   98. Defendant/Counterclaimant WRCS incorporates the allegations contained in paragraphs 1 through 97**108** of its counterclaims as if fully set forth herein.

**110.**   99. On or about November 1, 1999, WRCS entered into an agreement with MCB whereby MCB agreed, among other things, to provide all administrative, operational, managed care marketing and contracting, and practice management consulting necessary for the effective management of WRCS.  In return, WRCS agreed to make monthly payments to MCB to pay for WRCS's overhead expenses.

**111.**   100. By mutual agreement of the parties, the monthly payment was reduced on two occasions to reflect reductions in WRCS's overhead expenses.

**112.**   101. MCB owed to WRCS a duty to use the skill and care of a reasonably competent practice management firm.

**113.**   102. MCB negligently breached its duty by, among other things:

    a.    retaining the entirety of WRCS's payments to MCB to derive a profit or to use the funds to pay overhead and other expenses of MCB;

    b.    failing to properly account for payments received from the Washington Hospital Center;

c.      failing to compare payments received from WRCS's managed care contracts to determine whether WRCS was receiving adequate reimbursement under these contracts;

d.      failing to adequately managed daily account activity at WRCS; and,

e.      otherwise acting in a negligent manner.

**114.**      103. WRCS has incurred a loss as a direct and proximate result of MCB's negligent actions.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendant MCB in an amount to be determined at trial, plus pre- and post-judgment interest, costs, attorneys fees, and such other relief as the Court deems appropriate.

**COUNT IX**
**(Negligence)**
**(Against PSS)**

**115.**      104. Defendant/Counterclaimant WRCS incorporates the allegations contained in paragraphs 1 through 103**114** of its counterclaims as if fully set forth herein.

**116.**      105. On or about November 1, 1999, WRCS entered into an agreement with PSS whereby PSS agreed, among other things, to be the exclusive billing agent for WRCS and, on behalf of WRCS, submit all claims for professional

services, answer inquiries regarding billing matters in a prompt and courteous manner, perform collection follow-up, and provide WRCS with management reports regarding collections and accounts receivable.

**117.**    ~~106.~~ In exchange for the above services, WRCS was to make monthly payments to PSS.

**118.**    ~~107.~~ PSS owed to WRCS a duty to use the skill and care of a reasonably competent billing management firm.

**119.**    ~~108.~~ PSS negligently breached its duty by, among other things:

a.    failing to conduct adequate follow up after issuing bills for services rendered by WRCS;

b.    depositing certain payments into a general account instead of determining which account should be credited with the payment;

c.    utilizing a computer system that provided access to WRCS's patient accounts to other medical practices,

d.    "zeroing out" one or more accounts with a sizeable balance due without authorization from or notice to WRCS, despite the fact that no payment had been received;

e.    billing WRCS more than the market rate for billing services;

f.      failing to compare payments received from WRCS's managed care contracts to determine whether WRCS was receiving adequate reimbursement under these contracts;

g.      failing to provide adequate management reports regarding collections and accounts receivable;

h.      failing to adequately managed daily account activity at WRCS; and,

i.      otherwise acting in a negligent manner.

**120.**    ~~109.~~ WRCS has incurred a loss as a direct and proximate result of PSS's negligent actions.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendant PSS in an amount to be determined at trial, plus pre- and post-judgment interest, costs, attorneys fees, and such other relief as the Court deems appropriate.

<u>**COUNT X**</u>
**(Breach of Fiduciary Duty)**
**(Against MCB)**

**121.**    ~~110.~~ Defendant/Counterclaimant WRCS incorporates the allegations contained in paragraphs 1 through ~~109~~**120** of its counterclaims as if fully set forth herein.

**122.** ~~111.~~ WRCS and MCB entered into a Management Agreement on or about November 1, 1999.

**123.** ~~112.~~ Paragraph 12 of the agreement provides as follows:

> ***Strict Loyalty.*** MCB shall avoid all circumstances and actions, which reasonably would place MCB in a position of divided loyalty with respect to their obligations under this contract.

**124.** ~~113.~~ Paragraph 12 of the agreement created a fiduciary relationship between MCB and WRCS and, as a result, MCB owed fiduciary duties to WRCS.

**125.** ~~114.~~ MCB breached its fiduciary duties by, among other things, overcharging WRCS, wrongfully deriving a profit from the payments received by WRCS, wrongfully using WRCS's overpayments to fund overhead expenses of MCB including salaries**, distributions and other benefits** of MCB personnel and executives**, including Mr. Beam and Mr. Zorn**, and mismanaging the WRCS practice.

**126.** ~~115.~~ WRCS suffered damages as a result of MCB's breach of its fiduciary duties.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendant MCB for compensatory damages in an amount to be determined at trial in compensatory damages, plus pre- and

post-judgment interest, costs, attorneys fees, and such other relief as the Court
deems appropriate.

**COUNT XI**
**(Unjust Enrichment)**
**(Against MCB, PSS, Mr. Beam and ~~PSS~~Mr. Zorn)**

**127.**    ~~116.~~ Defendant/Counterclaimant WRCS incorporates the
allegations contained in paragraphs 1 through ~~115~~**126** of its counterclaims as if fully
set forth herein.

**128.**    ~~117.~~ In November 1999, WRCS entered into a management
agreement with MCB and a billing agreement with PSS.  WRSC made monthly
payments to MCB and PSS from November 1999 through August 2001.

**129.**    ~~118.~~ WRCS was induced into entering into **and continuing to
perform** the agreements by false and misleading statements made on behalf of MCB
and PSS.

**130.**    ~~119.~~ MCB and PSS both committed**, and Mr. Beam and Mr.
Zorn caused MCB and PSS to commit,** material breaches of ~~their~~**the** agreements
with WRCS.

**131.**    ~~120.~~ MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr.** ~~both~~**Zorn** wrongfully
derived profits **and other gains** from ~~their agreements with~~ WRCS, wrongfully
used portions of payments by WRCS to MCB to pay overhead and other expenses of
MCB and/or PSS, and **for Mr. Beam's and Mr. Zorn's personal benefit, and**

otherwise caused WRCS to make overpayments to MCB and PSS, thereby conferring benefits upon MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** that MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** were aware of and appreciated.

**132.**    ~~121.~~ Because WRCS was wrongfully induced into entering into **and continuing to perform** the agreements, and because MCB and PSS breached the agreements by wrongfully retaining the entirety of payments by WRCS or wrongfully using a portion of the payments for purposes other than the payment of WRCS's overhead expenses, and by otherwise not performing their duties under the agreements, **and because Mr. Beam and Mr. Zorn intentionally gave WRCS false and misleading information regarding the use of WRCS's payments to MCB,** retention by MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** of the benefits conferred by WRCS would be inequitable.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment against Plaintiff/Counterclaim Defendants MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** and seeks an Order compelling MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** to disgorge all profits derived under the agreements with WRCS and all payments wrongfully received from WRCS under the agreements, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, attorneys fees, and such other relief as the Court deems appropriate

**COUNT XII**
**(Promissory Estoppel)**
**(Against MCB and PSS)**

**133.** ~~122.~~ Defendant/Counterclaimant WRCS incorporates the allegations contained in paragraphs 1 through ~~121~~**132** of its counterclaims as if fully set forth herein.

**134.** ~~123.~~ Mr. Beam, on behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices.

**135.** ~~124.~~ When Mr. Beam made the representations, he reasonably expected that they would induce WRCS to enter into agreements with MCB and PSS.

**136.** ~~125.~~ WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on behalf of MCB and PSS.

**137.** ~~126.~~ As a result of its reliance on the representations made by Mr. Beam on behalf of MCB and PSS, WRCS suffered a detriment which only can be avoided by enforcement of the representations that MCB would profit from its contract with WRCS.

WHEREFORE, Defendant/Counterclaimant WRCS demands judgment for damages against Plaintiff/Counterclaim Defendants MCB and PSS and seeks an Order compelling MCB and PSS to disgorge all profits derived under the agreements with WRCS and all payments wrongfully received from WRCS under the agreements, in an amount to be determined at trial, plus pre- and post-judgment interest, costs, attorneys fees, and such other relief as the Court deems appropriate.

### RELIEF SOUGHT

WHEREFORE, WRCS prays for a judgment in its favor and against MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** as follows:

1.    For dismissal of Plaintiffs' claims in their entirely, with prejudice;

2.    For an Order rescinding the November 1, 1999 Agreement between WRCS and MCB and returning the parties to their positions prior to the formation of the agreement;

3.    For an Order rescinding the November 1, 1999 Agreement between WRCS and PSS and returning the parties to their positions prior to the formation of the agreement;

4.    For an Order compelling MCB**, PSS, Mr. Beam** and ~~PSS~~**Mr. Zorn** to disgorge all profits **and other wrongful gains** that they derived from

~~their~~**the** agreements ~~with~~**between MCB, PSS and** WRCS and disgorge all payments wrongfully received from WRCS and awarding the disgorgement to WRCS;

5.    For an Order compelling MCB**, PSS, Mr. Beam and Mr. Zorn** to refund to WRCS all payments made to MCB in excess of the amount of WRCS's overhead expenses;

6.    For an award to WRCS's of its ~~compensatory damages in an for~~ compensatory damages in an amount to be determined at trial;

7.    For an award of WRCS's fees and costs of this action, including attorneys' fees; and,

8.    For such other relief as is just under the circumstances.

**<u>DEMAND FOR JURY TRIAL</u>**

Defendant/Counterclaimant Washington Regional Cardiac Surgery, P.C. demands a trial by jury on all issues so triable.

_____

Mark D. Gately (F. B. No. 00134)
Steven F. Barley (F. B. No.  10049)
Robert A. Cohen (F. B. No.  25278)
HOGAN & HARTSON L.L.P.
111 South Calvert Street
Suite 1600
Baltimore, Maryland 21202
(410) 659-2700
**(410) 539-6981 (fax)**

Attorneys for Washington Regional
Cardiac Surgery, P.C.

Dated:   ~~April 12, 2002~~**May 15, 2003**