### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND
#### (Northern Division)

| | | |
|---|---|---|
| MCB MANAGEMENT SERVICES, LLC, et al., | * | |
| | * | |
| Plaintiff/Counterclaim Defendants | * | |
| v. | * | Civil Action No. AMD-02-CV 525 |
| WASHINGTON REGIONAL, CARDIAC SURGERY, P.C., | * | |
| | * | |
| Defendant/Counterclaim Plaintiff | * | |
| | * | |
| WASHINGTON REGIONAL CARDIAC SURGERY, P.C., | * | |
| | * | |
| Defendant and Counterclaim Plaintiff | * | |
| | * | |
| v. | * | |
| WILLIAM BEAM and CHARLES ZORN, | * | |
| | * | |
| Counterclaim Defendants. | | |

\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*　\*

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

### INTRODUCTION

William Beam and Charles Zorn ("Mr. Beam & Mr. Zorn" or "Counterclaim Defendants") are now brought personally into this case 15 months after it was commenced <u>and</u> one year after the deadline for amendments to the pleadings. Counterclaim Plaintiff, Washington Regional Cardiac Surgery, P.C. ("WRCS") asserts that all discovery is completed and that that is ready for trial. WRCS, at the 11th hour, counterclaims against two shareholders

of the Plaintiff in a blatant attempt to use allegations of fraud as a means to harm Mr. Beam and Mr. Zorn's reputations and force a settlement of the case.

The counterclaims against Mr. Beam and Mr. Zorn are: Count II, Fraud in the Inducement (Mr. Beam); Count IV, Negligent Misrepresentation (Mr. Beam); Count V, Fraud and Deceit (Mr. Beam and Mr. Zorn); and Count XI, Unjust Enrichment (Mr. Beam and Mr. Zorn). These counts fail to satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). The cause of action for Unjust Enrichment also fails because it is also based on fraud and it fails to state the necessary factual and legal basis required to pierce the protection of MCB's corporate shield.

This is a simple breach of contract case, which seeks payment for money owed to MCB and Physician Support Services, LLC ("PSS"). If the Counterclaims survive, they will substantially broaden the area's of inquiry for this case, necessitate additional discovery, and will needlessly increase the expenditure of judicial and legal resources. For the reasons set forth below, the Court should immediately dismiss the Counterclaims against Mr. Beam and Mr. Zorn as these counts to state a claim upon which relief may be granted.

**I.      The Amended Counterclaims should be Dismissed Under Federal Rules of Civil Procedure 9(b) and 12(b)(6)**

The Amended Counterclaims against Mr. Beam and Mr. Zorn should be dismissed because the allegations of the fraud are not pleaded with particularity and they fail to state claims upon which relief can be granted. Federal Rule of Civil Procedure 9(b) provides:

**Rule 9.  Pleading Special Matters.**

* * *

(b)     Fraud, Mistake, Condition of the Mind.  In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The Court in <u>Adams v. NVR Homes, Inc.</u>, 193 FRD 243, 2000 U.S. DIST. LEXIS 9324 at

13-14 (D. Md. 2000) citing <u>Lasercomb America, Inc. v. Reynolds</u>, 911 F.2d 970, 980 (4th Cir.

1990) explained that:

(1)     three reasons have been identified for the requirement of particularity in Rule 9(b);

(2)     to provide defendants with fair notice of Plaintiff' claims;

(3)     to protect defendants from harm to their reputation or goodwill; and

(4)     to reduce the number of nuisance or "strike" suits. <u>Gollomp v. MNC Financial, Inc.</u>, 756 F. Supp. 228, 232 (D. Md 1991).

A complaint which fails to specifically allege the time; place and nature of the fraud is

subject to dismissal pursuant to a Rule 12(b) 6 motion.  Furthermore, "[t]he Rule 9(b)

particularity problem is exacerbated when multiple defendants are involved.  A complaint that

generally alleges a fraudulent scheme without clearly specifying which defendant played which

role fails to comport with the rule." <u>Kerby v. Mortgage Finding Corporation, et. al.</u>, 992 F.

Supp. 787 at 35 (D. Md 1998).

The Counterclaim Plaintiff is required to plead with particularity "the time, place,

speaker and contents of the allegedly false statement, as well as the manner in which the

statements are false and the specific facts raising an inference of fraud.  <u>In re Criimi Mae, Inc.</u>

3

Securities Litigation, 94 F. Supp. 2d 652 at 567 (D. Md 2000) citing, In re Medimmune, Inc.

Sec. Litig., 873 F. Supp. 953, 960 (D. Md 1995).

Judge Ramsey also explained in Myland Laboratories, Inc. v. Akzo, N.V., 770 F. Supp.

1053, 1074-75 (D. Md 1991) that:

> …the requirement of "particularity" does not require the
> elucidation of every detail of the alleged fraud, but does require
> more than a bare assertion that such a cause of action exists.
> Copiers Typewriters Calculations v. Toshiba Corp., 576 F. Supp.
> 312, 327 (D. Md 1983).  Specifically, detail is necessary when
> pleading the "circumstances" of fraud. 'The rule requires the
> presentation of the situation out of which the claim arose.'  Oliver
> v. Bosteller, 426 F. Supp. 1082, 1089 (D. Md. 1977).
>
>> "Circumstances' refers to such matters as 'time,
>> place and contents of the false representations, as
>> well as the identity of the person making the
>> misrepresentation, and what [was] obtained
>> thereby".'
>
> Windsor Assoc., Inc. v. Greenfeld, 564 F. Supp. 273, 280 (1983)
> citing Wright and Miller Federal Practice and Procedure, § 1297,
> at 590 (1990).

Now, with the above criteria in mind, a review of the deficient and inadequate

allegations asserted in the Counterclaim establishes the grounds for dismissal of the

counterclaims.  The following paragraphs assert generally some fraudulent or deceitful action

by Mr. Beam and/or Mr. Zorn.  Following each paragraph is an evaluation of the deficiency in

the allegations as required by Federal Rule of Civil Procedure 12(e).  Paragraph numbers are

those used in the Amended Counterclaim.  These deficiencies justify the dismissal of the suit

or, in the alternative, a more definite statement of the facts supporting the counts against Mr.

Beam and Mr. Zorn.  However, given the absence of any fraud, it is highly unlikely that a more

definite statement can be provided.

4

A.    **Pleading Deficiencies in the Counterclaim.**

The following section sets for the deficiencies in the Counterclaims asserted against Mr.

Beam and Mr. Zorn.

**"12.    Mr. Beam proposed to Drs. Mispireta and Corso that, at no extra cost, the MSO would perform the same management services for WRCS that WRCS staff currently performed. In addition, his plan was to have the MSO obtain contracts to manage other medical practices in the Baltimore and Washington, D.C. areas."**

**Argument**:  This allegation is misleading and deficient because it intentionally does not

specify the time or date when Mr. Beam made the proposal.  The Counterclaim Plaintiff should

be compelled to set forth the "time and place" of this representation.  It is readily apparent that

the Contract between MCB and WRCS dated November 1, 1999, supercedes any prior

discussions and renders prior discussions irrelevant.  However, to the extent that WRCS feels

compelled to fabricate a cause of action for fraud and inpune Mr. Beam and Mr. Zorn's

reputations they must at least satisfy the requirements of Rule 9(b) or suffer dismissal.

**"13.    Mr. Beam represented to Drs. Mispireta and Corso that not only would there be no additional cost to WRCS associated with the separate MSO structure, the MSO would significantly reduce WRCS's overhead costs. He also represented that the MSO would not earn a profit from its services for WRCS. Instead, he represented that the MSO would use the highly regarded WRCS name and reputation to obtain management contracts with other medical practices, from which WRCS would profit. Indeed, Mr. Beam represented that not only would the MSO not earn a profit from its contract with WRCS, but that the MSO would take advantage of economies of scale and management expertise to lower the cost of managing the WRCS practice. At the same time, the owners of the MSO, including Mr. Beam, would, under the business plan articulated by Mr. Beam, earn significant profits from the future management contracts that Mr. Beam said would be entered into between MCB and other medical practices."**

**Argument**:  In addition, the Counterclaim Plaintiff intentionally omits the fact that there were multiple discussions over time which covered variant proposals for how the relationship might be structured.  In this paragraph they disingenuously chose one proposal and try to make it applicable to a different and final deal.  The final deal is a fixed price contract. Allegations of anything else are pure fabrications and are not supportable.  Support for such absurd positions have to be pled with particularity in compliance with Rule 9(b).  The argument for paragraph 12 above also applies here.

> **"19.    Mr. Beam repeatedly represented to Drs. Mispireta and Corso that MCB would not earn a profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, and that MCB would earn a profit by marketing itself using the WRCS name to obtain profitable contracts to manage other practices.  Drs. Mispireta and Corso relied on these repeated representations in agreeing to the separate MSO structure and the creation of MCB as well as its contract with WRCS."**

**Argument**:  A necessary element for the proof of fraud is that the Plaintiff justifiably relied on the statement.  There is no justifiable reliance that can be shown on these unidentified "repeated representations."  The November 1, 1999 contract **does not** prohibit a profit.  In fact, it is idiotic for WRCS to suggest that MCB, or any party, that any party would enter into a contract that prohibited profit.  Additional facts are required in order to bring this allegation into compliance with Rule 9(b) <u>and</u> the dictates of common sense.  The argument in paragraph 12 above, also applies here.

> **"27.    In mid- to late- 1999, Mr. Beam approached Dr. Mispireta and Dr. Corso advising them of an alleged problem with their ownership interest in MCB and PSS.  Mr. Beam told Dr. Mispireta and Dr. Corso that he (Mr. Beam) had spoken with an attorney who had told him (Mr. Beam) that, pursuant to a federal statute commonly referred to as the Stark Amendments, Dr. Mispireta and Dr. Corso were prohibited from owning an interest in MCB**

**and PSS.  Mr. Beam told Dr. Mispireta and Dr. Corso that they should transfer their interests in MCB and PSS to him."**

**Argument**:  This allegation fails to detail with particularity the time, place and specifics of the statements allegedly made by Mr. Beam.  This allegation is offensive and disingenuous given the testimony and evidence given by H.L. Sollins, Esq., counsel for Dr. Mispireta.  Mr. Sollins explained the independent legal advice he gave on this issue in his memorandum dated October 11, 1999.  That memorandum was attached as Exhibit 10 to MCB's Motion for Summary Judgment.  Another copy is attached hereto as Exhibit "A" hereto.   Mr. Sollins' clear advice to Drs. Mispireta and Corso on the subject predates the transfer of ownership to Mr. Beam.  Why Drs. Mispireta and Corso would choose to rely on Mr. Beam, who is not an attorney, is not believable and does not satisfy the obligation for pleading reasonable reliance.

**"28.     Relying upon the statements made by Mr. Beam about the purported problems associated with their ownership of an interest in MCB, upon information and belief, Dr. Mispireta and Dr. Corso purported to transfer their interests in MCB to Mr. Beam in 1999."**

**Argument**:  In this paragraph WRCS expands Mr. Beam's prior statement into "statements" and references multiple unspecified "problems."  As an allegation of fraud, these statements must be specifically identified along with a specific identification of the "problems associated with their ownership" attributed to Mr. Beam.  Again, the reasonableness of Dr. Mispireta's and Dr. Corso's reliance should be considered by this Court in the full context of this case.  The Doctor's reliance on those undefined "statements" approaches the inane given the evidence offered by Mr. Sollins.  See Exhibit A.

**"32.     After the purported transfer of their interests in MCB to Mr. Beam, Dr. Mispireta and Dr. Corso learned that their ownership interests in MCB and PSS were not prohibited**

**by the Stark Amendments. Upon information and belief, Mr. Beam was never told by an attorney that the doctors' ownership interests were prohibited by the Stark Amendments."**

<u>Argument</u>: This allegation shows the insincerity of Counterclaim Plaintiff's claimed reliance on Mr. Beam's alleged misrepresentation. Yet, this paragraph fails to identify how Counterclaim Plaintiff learned the information on the Stark Amendments, what was learned and from whom it was learned. Perhaps this is a concession that Counterclaim Plaintiff recalls that it spoke with attorney Sollins. If Counterclaim Plaintiff checked the actual dates of the discussions referenced in the Sollins memorandum it might concede that there is no support for the fraud in the inducement count. Greater specificity in compliance with Rule 9(b) would assist the clarity of this allegation. As for the remaining allegation that is based "upon information and belief," the Counterclaim Plaintiff does not have the flexibility to allege fraud on such a fuzzy and unspecified basis, especially when the standard of proof is clear and convincing evidence. <u>See</u>, <u>generally</u>, <u>Dreisenstok v. Hoffman</u>, 709 Md. 98, 120 A.2d 373 (1956).

**"34.    Both before and after WRCS entered into the new agreements with MCB and PSS in 1999, Mr. Beam continued to represent to Dr. Mispireta, Dr. Corso, and other doctors that MCB had not in the past and would not in the future earn a profit from its dealings with WRCS. Mr. Beam specifically referred to the payments from WRCS to MCB as "pass through" payments of WRCS's expenses. Mr. Zorn made similar representations to WRCS. Mr. Beam and Mr. Zorn made these representations on more than one occasion and, in doing so, were acting within the scope of his employment with MCB."**

<u>Argument</u>: The Counterclaim Plaintiff must specifically identify the contents of representation, the timeframe when the statement was made and, parties present when Mr. Beam and Mr. Zorn made those "continued representations." "[W]hen a plaintiff alleged that statements that were made were false, but did not indicate when those statements were made,

plaintiff would be required to amend or suffer dismissal." <u>Wright</u> and <u>Miller</u> 1297 at p. 605;

see also, <u>Toshiba</u>, 576 F. Supp. 312.  Moreover, the assertion that these statements were made

while acting within the scope of their employment only further serves to distance Mr. Beam and

Mr. Zorn from personal liability.  It also raises the questions as to how the corporate structure

of MCB can be pierced at all.  Accordingly, this allegation is legally deficient and the counts

against Mr. Beam and Mr. Zorn should be dismissed.

**"38.    After the execution of the 1999 Agreement with MCB, WRCS began to make the monthly payments to MCB.  The payments were later reduced because of reductions in WRCS's overhead expenses.  This reduction in the monthly payment amount was in keeping with representations by Mr. Beam and Mr. Zorn, the language of the 1999 Agreement, and the intent of the parties that the monthly payments were meant to be pass through payments of WRCS's overhead expenses."**

<u>Argument</u>:  Again, the Counterclaim Plaintiff reference that this allegation was "in

keeping with representations" by Mr. Beam and Mr. Zorn, but none of the required particulars

are provided.

**"43.    In addition, during performance of the contract between MCB and WRCS, Mr. Beam and Mr. Zorn personally provided WRCS with financial information that WRCS now knows to have been intentionally false and designed to mislead WRCS into believing that MCB was not deriving a profit from WRCS.  The financial statements misled WRCS into believing that Mr. Beam and Mr. Zorn were using WRCS's monthly payments only to pay WRCS's overhead expenses when, in fact, large portions of the payments were used for other payments, including Mr. Beam's and Mr. Zorn's personal retention for themselves of hundreds of thousands of dollars from WRCS's payments."**

<u>Argument</u>:  This paragraph fails to specify the financial information that was

intentionally false and misleading.  It also fails to identify the time, place and content of the

information and specifically who delivered the information.  When multiple defendants are

accused, the Rule 9(b) particularity problem is exacerbated.  See, Kerby, 992 F. Supp. 787 at

799.

> **"44.     Mr. Beam and Mr. Zorn also intentionally made misleading and false statements to WRCS, orally and by e-mail, that MCB was not deriving a profit from WRCS, that MCB, Mr. Beam and Mr. Zorn only used WRCS's monthly payments to pay WRCS's overhead expenses, and that all savings from reductions in WRCS's overhead expenses were being returned to WRCS.  WRCS now knows that these statements were intentionally false and misleading."**

<u>Argument</u>: This paragraph is devoid of specificity.  To comply with Rule 9(b), the

Counterclaim Plaintiff must specify the false statements, "identify the speaker, state when and

where the statements were made and explain why the statements were fraudulent, what the

misrepresented facts were, and what the person gained by making them." <u>O'Connor's Federal</u>

<u>Rules</u>, Civil Trials § 5.3 at p. 54, citing <u>Williams v. WMX Tech., Inc.</u>, 112 F.3d 175, 177 (5th

Cir. 1997) and <u>Firestone v. Firestone</u>, 76 F.3d 1205, 1211 (D.C. Cir. 1996).

> **"45.     WRCS relied on MCB, Mr. Beam and Mr. Zorn to act in compliance with their representations, the parties' agreements and the strict duty of loyalty created in the 1999 Agreement between the parties.  In providing WRCS with intentionally false and misleading information, MCB, Mr. Beam and Mr. Zorn each violated the parties' agreements and their representations to WRCS and engaged in fraud."**

<u>Argument</u>: Conclusory allegations that WRCS was intentionally provided with false

and misleading information begs the question.  The separate and distinct actions of Mr. Beam

and Mr. Zorn must be identified.  Such pleading is deficient and warrants dismissal of the

Counterclaim.

"49.    Mr. Beam and Mr. Zorn personally benefited from their wrongful acts, their intentionally false and misleading representations and financial statements, and from the wrongful use of WRCS's payments under the agreement between WRCS and MCB.  Mr. Beam and Mr. Zorn personally benefited by wrongly using WRCS's payments to award themselves tremendous salaries, bonuses, distributions, and fringe benefits."

**Argument**.  This paragraph again is only conclusory.  It does not identify the "misleading representations and financial statements."  It also fails to identify the benefit to Mr. Beam and Mr. Zorn personally versus MCB or PSS.  No basis is given for piercing MCB's corporate veil and imposing the extraordinary sanction of personal liability.

"50.    Eventually, even though Mr. Beam and Mr. Zorn never fully revealed their use of WRCS's payments, WRCS finally obtained and then reviewed WRCS's overhead expenses and compared them to the monthly payments made to MCB.  WRCS discovered that its monthly payments to MCB did not accurately reflect WRCS's overhead expenses, but instead, contrary to the contractual agreement between WRCS and MCB and contrary to representations made by Mr. Beam and Mr. Zorn, far exceeded WRCS's monthly expenses.  WRCS discovered that MCB charged WRCS for items that were not overhead expenses of WRCS."

**Argument**:  This paragraph fails to provide specific reference to details of the inaccurate representations and the specifics which give rise to a claim for fraud against Mr. Beam and Mr. Zorn.

"51.    In addition, upon information and belief, MCB did not properly account for certain payments received from the Washington Hospital Center ("WHC").  WHC, with which WRCS was affiliated, paid for a portion of the salaries of certain WRCS staff because they also performed duties for WHC.  WRCS discovered that MCB submitted inflated salary information to WHC."

11

**Argument**: If WRCS "discovered" that MCB submitted an inaccurate accounting or inflated salary information, then the how, when and where of that misconduct should be specifically explained in compliance with Rule 9(b).

> **"57.    WRCS discovered improprieties and mismanagement by MCB, PSS, Mr. Beam and Mr. Zorn. MCB, Mr. Beam and Mr. Zorn overbilled WRCS for overhead expenses and retained WRCS payments well in excess of WRCS's overhead expenses. WRCS also learned that MCB, PSS, Mr. Beam and Mr. Zorn mismanaged the management of the practice and its billing."**

**Argument**: Each of the three sentences of this paragraph need to be clarified and expanded. Separate treatment of Mr. Beam and Mr. Zorn must be specified and the two Counterclaim Defendants cannot simply be lumped together with MCB and PSS.

> **"COUNT I**
> **(Fraud in the Inducement — Rescission)**
> **(Against MCB and PSS)**

> **"60.    Mr. Beam, on behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices."**

**Argument**: This paragraph fails to specifically identify what the "repeated representations" were and when they occurred. The specific statements, the dates, when it occurred, where it occurred and who was present are necessary facts that must be pled to comply with Rule 9(b).

12

**"61.     Mr. Beam also represented that an attorney had told Mr. Beam that Dr. Mispireta and Dr. Corso were prohibited from owning interests in MCB and PSS because of federal statutes known as the Stark Amendments."**

**Argument**:  The when and where of this alleged representation must be provided along with the specific details that give rise to fraud.  The Counterclaim Plaintiff should also be mindful of Rule 11 when evaluating their response.  This is especially true given Mr. Sollins testimony on this subject.  See Exhibit A hereto.

**"63.     Mr. Beam made these representations, on behalf of MCB and PSS, to induce WRCS to enter into new management and billing agreements with MCB and PSS."**

**Argument**:  Counterclaim Plaintiff states that "Mr. Beam made these representations" which indicates more than one representation was made.  Each representation should be specified with the requisite specificity.  There also should be a factual allegation as to the benefit to be gained by Mr. Beam's alleged "representations."

**"64.     WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on behalf of MCB and PSS."**

**Argument**:  As was discussed above, "reasonable, detrimental reliance on a misrepresentation is an essential element of a cause of action for fraud and that reliance must be pleaded  with particularity."  Wright and Miller § 1297, pg. 589, citing Learning Works, Inc. v. Learning Annex, Inc., 830 F.2d 541 (4th Cir. 1987).

**COUNT II**
**(Fraud in the Inducement — Money Damages)**
**(Against MCB, PSS and Mr. Beam)**

"67.    Mr. Beam, on his own behalf and on behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices."

<u>Argument</u>:  This paragraph is essentially a duplicate of paragraph 60; therefore, its inadequacies will not be reiterated.

"68.    Mr. Beam also represented that an attorney told Mr. Beam that Dr. Mispireta and Dr. Corso were prohibited from owning interests in MCB and PSS because of federal statutes known as the Stark Amendments."

<u>Argument</u>:  This paragraph is essentially a duplicate of paragraph 61; therefore, its inadequacies will not be reiterated.

"69.    When Mr. Beam made the representations, he knew that they were false or made them with reckless disregard as to their falsity."

<u>Argument</u>:  This paragraph is essentially a duplicate of paragraph 62; therefore, its inadequacies will not be reiterated.

"70.    Mr. Beam made these representations, on his own behalf and on behalf of MCB and PSS, to induce WRCS to enter into new management and billing agreements with MCB and PSS."

14

**Argument**:  This paragraph is essentially a duplicate of paragraph 63; therefore, its inadequacies will not be reiterated.

**"71.    WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on his own behalf and on behalf of MCB and PSS."**

**Argument**:  This paragraph is essentially a duplicate of paragraph 64; therefore, its inadequacies will not be reiterated.

**COUNT III**
**(Negligent Misrepresentation — Rescission)**
**(Against MCB and PSS)**

**"74.    Mr. Beam, on behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices."**

**Argument**:  This paragraph is essentially a duplicate of paragraph 60; therefore, its inadequacies will not be reiterated.

**"75.    Mr. Beam also represented that an attorney had told Mr. Beam that Dr. Mispireta and Dr. Corso were prohibited from owning interests in MCB and PSS because of federal statutes known as the Stark Amendments."**

**Argument**:  This paragraph is essentially a duplicate of paragraph 61; therefore, its inadequacies will not be reiterated.

15

"78.    Mr. Beam made these representations, on behalf of MCB and PSS, to induce WRCS to enter into new management and billing agreements with MCB and PSS."

<u>Argument</u>:  This paragraph is essentially a duplicate of paragraph 63; therefore, its inadequacies will not be reiterated.

"79.    WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on behalf of MCB and PSS."

<u>Argument</u>:  This paragraph is essentially a duplicate of paragraph 64; therefore, its inadequacies will not be reiterated.

## COUNT IV
### (Negligent Misrepresentation – Money Damages)
### (Against MCB, PSS and Mr. Beam)

"82.    Mr. Beam, on his own behalf and on behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices."

<u>Argument</u>:  This paragraph is essentially a duplicate of paragraph 60; therefore, its inadequacies will not be reiterated.

"83.    Mr. Beam also represented that an attorney had told Mr. Beam that Dr. Mispireta and Dr. Corso were prohibited from owning interests in MCB and PSS because of federal statutes known as the Stark Amendments."

**Argument**: This paragraph is essentially a duplicate of paragraph 61; therefore, its inadequacies will not be reiterated.

**"84.    Mr. Beam, MCB, and PSS owed a duty of care to Dr. Mispireta, Dr. Corso, and WRCS to transmit accurate information and not to transmit false and inaccurate information."**

**Argument**: As to Mr. Beam, the basis for the assertion that there is a duty of care, either contractual or otherwise, is not explained in the Counterclaim.

**"85.    The statements by Mr. Beam, on his own behalf and on behalf of MCB and PSS were false when they were made. Mr. Beam, on his own behalf and on behalf of MCB and PSS, was negligent in making the false statements."**

**Argument.** The paragraph fails to identify any information concerning the "statements by Mr. Beam."

**"86.    Mr. Beam made these representations, on his own behalf and on behalf of MCB and PSS, to induce WRCS to enter into management and billing agreements with MCB and PSS."**

**Argument.** Again, there is no description of "these representations."

**"87.    WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on his own behalf and on behalf of MCB and PSS."**

**Argument**: If the representations were identified, the reasonableness of the reliance upon them could be evaluated.

**COUNT V**
**(Fraud and Deceit)**
**(Against MCB, PSS, Mr. Beam and Mr. Zorn)**

**"90.    Mr. Beam and Mr. Zorn, on their own behalf and on behalf of MCB and PSS and acting within the scope of their employment with and ownership of those entities, repeatedly represented to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices."**

<u>Argument</u>:  This paragraph is essentially a duplicate of paragraph 60; therefore, its inadequacies will not be reiterated.

**"91.    When Mr. Beam and Mr. Zorn made the representations, they knew that they were false or made them with reckless disregard as to their falsity."**

<u>Argument</u>:  Counterclaim Plaintiff state that "Mr. Beam and Mr. Zorn made the representations" which indicates more than one representation was made.  Each representation should be specified with the requisite specificity.  There also should be a factual allegation as to the benefit to be gained by Mr. Beam's and Mr. Zorn's alleged "representations."

**"92.    Mr. Beam and Mr. Zorn made these representations, on their own behalf and on behalf of MCB and PSS, to induce WRCS to enter into and continue to perform management and billing agreements with MCB and PSS."**

<u>Argument</u>:  Counterclaim Plaintiff state that "Mr. Beam made these representations" which indicates more than one representation was made.  Each representation should be

18

specified with the requisite specificity.  There also should be a factual allegation as to the

benefit to be gained by Mr. Beam's alleged "representations."

> **"93.    WRCS, in entering into and performing management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam and Mr. Zorn on their own behalf and on behalf of MCB and PSS."**

**Argument**:  If the representations were identified, the reasonableness of WRCS'

reliance upon them could be evaluated.

> **"94.    In direct contrast to the representations made by Mr. Beam and Mr. Zorn on their own behalf and on behalf of MCB and PSS, MCB, PSS, Mr. Beam and Mr. Zorn wrongfully profited from their contracts with WRCS and wrongfully charged and retained payments made by WRCS well in excess of WRCS's overhead expenses."**

**Argument**:  The alleged wrongful profits and charges are not explained or identified

with the particularity required.

> **"95.    Mr. Beam and Mr. Zorn provided knowingly misleading information to WRCS to perpetuate and continue their fraud."**

**Argument**:  Separate and identifiable instances of Mr. Beam's and Mr. Zorn's fraud

under this paragraph are not explained or identified.

> **"96.    WRCS suffered damages as a result of relying on the misrepresentations made by Mr. Beam and Mr. Zorn on their own behalf and on behalf of MCB and PSS."**

**Argument**:  Separate damage claims against Mr. Beam and Mr. Zorn should be

identified.

**COUNT XI**
**(Unjust Enrichment)**
**(Against MCB, PSS, Mr. Beam and Mr. Zorn)**

"129.    WRCS was induced into entering into and continuing to perform the agreements by false and misleading statements made on behalf of MCB and PSS."

<u>Argument</u>:  Any false or misleading statements should be identified.  If a "Plaintiff seeks to hold a defendant vicariously liable for acts of its agents it must allege factual predicate for agency relationship with particularity."  <u>Wright and Miller Sec. 1217 Supp. Pg. 145</u> citing, <u>Adams</u>, 193 FRD 143 (D.Md 2000).

"130.    MCB and PSS both committed, and Mr. Beam and Mr. Zorn caused MCB and PSS to commit, material breaches of the agreements with WRCS."

<u>Argument</u>.  See Argument above.

"131.    MCB, PSS, Mr. Beam and Mr. Zorn wrongfully derived profits and other gains from WRCS, wrongfully used portions of payments by WRCS to MCB to pay overhead and other expenses of MCB and/or PSS, and for Mr. Beam's and Mr. Zorn's personal benefit, and otherwise caused WRCS to make overpayments to MCB and PSS, thereby conferring benefits upon MCB, PSS, Mr. Beam and Mr. Zorn that MCB, PSS, Mr. Beam and Mr. Zorn were aware of and appreciated."

<u>Argument</u>.  The elements of piercing the corporate veil are not set forth and consequently this paragraph makes a fatal and faulty jump in logic.

"132.    Because WRCS was wrongfully induced into entering into and continuing to perform the agreements, and because MCB and PSS breached the agreements by wrongfully retaining the entirety of payments by WRCS or wrongfully using a portion of the payments for purposes other than the payment of WRCS's overhead expenses, and by

otherwise not performing their duties under the agreements, and because Mr. Beam and Mr. Zorn intentionally gave WRCS false and misleading information regarding the use of WRCS's payments to MCB, retention by MCB, PSS, Mr. Beam and Mr. Zorn of the benefits conferred by WRCS would be inequitable."

**Argument**.  The false and misleading information must be identified along with the inequitable gains received directly by Mr. Beam and Mr. Zorn form WRCS.

**COUNT XII**
**(Promissory Estoppel)**
**(Against MCB and PSS)**

"134.    Mr. Beam, on behalf of MCB and PSS and acting within the scope of his employment with and ownership of those entities, <u>repeatedly represented</u> to WRCS that MCB would not profit from its dealings with WRCS, that the management services provided by MCB to WRCS would not cost WRCS any more than it had cost WRCS to manage itself, that the payments by WRCS to MCB would be in an amount necessary only to pay WRCS's overhead expenses, and that MCB would earn a profit, if at all, by marketing itself using the WRCS name to obtain more lucrative contracts to manage other practices."

**Argument**:  This paragraph is essentially a duplicate of paragraph 60; therefore, its inadequacies will not be reiterated.

"135.    When Mr. Beam made the representations, he reasonably expected that they would induce WRCS to enter into agreements with MCB and PSS."

**Argument**:  This paragraph is essentially a duplicate of paragraph 63 and 64; therefore, its inadequacies will not be reiterated.

"136.    WRCS, in entering into management and billing agreements with MCB and PSS, justifiably relied upon the representations made by Mr. Beam on behalf of MCB and PSS."

21

**Argument**: This paragraph is essentially a duplicate of paragraphs 63 and 64; therefore, its inadequacies will not be reiterated.

**"137.    As a result of its reliance on the representations made by Mr. Beam on behalf of MCB and PSS, WRCS suffered a detriment which only can be avoided by enforcement of the representations that MCB would profit from its contract with WRCS."**

**Argument**: This paragraph is essentially a duplicate of paragraphs 63 and 64; therefore, its inadequacies will not be reiterated.

## II.    The Count for Unjust Enrichment Fails To Set Forth a Claim Upon Which Relief Can be Granted

WRCS has stated claims against Mr. Beam and Mr. Zorn asserting that they were "acting within the scope of their employment with and ownership of MCB and PSS." See e.g. Complaint at paragraph 90.  The Counterclaimant is attempting to pierce the corporate veil without actually setting forth the requisites for holding the individuals liable for corporate acts.

Similarly, the statement "acting within the scope of their employment with and ownership of" MCB and PSS is woefully inadequate to establish a unjust enrichment and thereby to pierce the corporate veil to hold Mr. Beam and Mr. Zorn personally liable.  Piercing the veil to expose individuals behind the corporation to liability is a drastic remedy.  In re Country Green, L.P., 604 F.2d 289, 292 (4th Cir. 1979).  The general rule in Maryland is that the aggrieved party must establish a clear showing of fraud, or the existence of more than one of the non-fraud based factors, such as ignoring corporate formalities and under-capitalization. Id. (citing DeWitt Truck Brokers v. Ray Flemming Fruit Co., 540 F.2d 681, 687 (4th Cir. 1976), applying South Carolina law and discussing several factors for piercing a corporation

veil). This fraud <u>must</u> be stated with particularity. As was detailed above, that particularity does not exist in this case. In fact, piercing the corporate veil for reasons other than fraud have failed in the Maryland Courts. <u>Iceland Telecom, Ltd. v. Information Systems and Networks Corp.</u>, __ F. Supp. __, 2003 U.S. Dist. LEXIS 11017, at *9 (June 17, 2003) (quoting <u>Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc.</u>, 126 Md. App. 294, 306, 728 A.2d 783 (1999)).

The Counterclaimant has not alleged the existence of any of the factors set forth in <u>DeWitt</u> to support an attempt to pierce the corporate veil. Importantly, as discussed in detail herein, the Counterclaimant has not adequately pled facts with the requisite particularity to sufficiently support any claims of fraud. Without the proper allegations of fraud, the Counterclaimant cannot pierce the corporate veil and sue for unjust enrichment. If the corporate veil is not pierced, the Counterclaimant cannot hold the individuals liable. Therefore, all of the counterclaims against Mr. Beam and Mr. Zorn must be dismissed.

The Counterclaimant states it is entitled to recover under the doctrine of unjust enrichment because, among other things, MCB and PSS have breached, and/or Mr. Beam and Mr. Zorn have caused MCB and PSS to breach, the 1999 Agreement. In fact, Counts VI and VII of the Counterclaim are counts for breach of contract. However, as a matter of Maryland law, where there is an existing express contract, the Counterclaimants are not entitled to recover under the quasi-contract remedy of unjust enrichment. <u>County Commissioners of Caroline County v. J. Roland Dashiell & Sons, Inc.</u>, 358 Md. 83, 94, 747 A. 2d 600, 606 (Ct. App. Md. 2000).

Quasi-contract is a court-created legal fiction which allows recovery by contractual remedy in cases where there is no contract, but there is an "obligation which the law creates in

absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it." <u>It</u>. at 94-95. Such remedies include unjust enrichment, which measures the plaintiff's damages by the amount of the benefit conferred upon the defendant. <u>Id</u>. at 94. However, as a matter of Maryland law, when a plaintiff's claim is based on a written contract, there can be no unjust enrichment. <u>Id</u>. at 96 (internal citations omitted). As the Court in <u>Dashiell</u> succinctly explained:

> "[t]he reason for this rule is not difficult to discern. When parties enter into a contract they assume certain risks with an expectation of a return. Sometimes, their expectations are not realized, but they discover that under the contract they have assumed the risk of having those expectations defeated. As a result, they have no remedy under the contract for restoring their expectations. In desperation, they turn to quasi-contract for recovery. This the law will not allow." <u>Id</u>.

This Court has interpreted the state court opinions on this matter and have uniformly held that it is well settled in Maryland that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties. <u>Id</u>. at 97 (citing <u>FLF, Inc. v. World Publications, Inc.</u>, 999 F. Supp. 640, 642 (D. Md. 1998).

The Counterclaimant admits that there is an express contract. It alleges that MCB and PSS have breached it, and Mr. Beam and Mr. Zorn that have caused MCB and PSS to breach it. It is therefore unable as a matter of law to bring a cause of action for unjust enrichment, and Count XI of the Counterclaims should be dismissed as to MCB and PSS. For the reasons set forth herein, the Counterclaimant has failed to properly pierce the corporate veil, therefore, Count XI of the Counterclaims should be dismissed as to Mr. Beam and Mr. Zorn as well.

## <u>CONCLUSION</u>

For the reasons set forth herein, the Counterclaims against Mr. Beam and Mr. Zorn should be dismissed.  In the alternative, the Counterclaim Plaintiff should be compelled to file a more definite statement in compliance with Federal Rule of Civil Procedure 9(b).

[SIGNATURE PAGE FOLLOWS]

Respectfully submitted,

LINOWES AND BLOCHER LLP

/s/ Paul-Michael Sweeney

Paul-Michael Sweeney
Federal Bar No. 00272
Carrie B. Weinfeld
Federal Bar Number 25365
7200 Wisconsin Avenue, Suite 800
Bethesda, MD  20814
301-961-5119

Counsel for Counterclaim
Defendants

\* \* \*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24 day of July, 2003, a copy of the foregoing Motion

and Memorandum In Support was served by first class mail, postage prepaid, on:

Gerald P. Martin, Esq.
Martin, Snyder & Bernstein, P.A.
217 E. Redwood Street
Baltimore, MD  21202

Mark D. Gately, Esq.
Steven F. Barley, Esq.
Robert A. Cohen, Esq.
Hogan & Hartson, LLP
111 South Calvert Street, #1600
Baltimore, MD  21202

/s/ Paul-Michael Sweeney

Paul-Michael Sweeney

# EXHIBIT A

# MEMO

**To:**       File
**From:**     HL Sollins
**Subject:**  Luis Mispireta, M.D.:  MCB
**Date:**     October 11, 1999

---

The following summarizes discussions with Dr. Mispireta, Dr. Corso and Bill Beam about MCB. Over the past weeks, Bill Beam described problems at PSS, involving Larry Sherman. MCB is the majority owner of PSS along with Whalen, Barsky and Larry Sherman. PSS' viability is in doubt. However, there is a line of credit for PSS that is personally guaranteed by Mispireta and Corso.

After discussion that included Mindi Antalek, we determined we should not be involved in representation, given the potential conflicts among the various parties. We have done limited work for MCB in the past.

Recently, Dr. Mispireta called seeking individual representation because he is leaving GMCPA. He is merging the Baltimore location in to Cardiac Surgical Associates, Garth McDonald's group practicing at St. Joseph Hospital. We cleared conflicts with GMCPA, and MedStar.

I then received a call from Dr. Mispireta, asking if I had given advice to MCB that it was illegal for him and Dr. Corso to own interests in MCB. I told him I would check but I did not readily recall being asked to given such advice. He alluded to comments by Bill Beam that I had given such advice to MCB.

I later received a call from Bill Beam. He told me he was aware this issue had been raised and wanted to clarify his comments. He remembered a meeting that included Sandy Teplitzky in which he recalled that Sandy commented that it is generally the approach of agencies that they would prefer physicians only earn revenues from clinical services and expressing concern about potential fraud and abuse issues. We did not provide any written analysis and no one recalled our advising of a prohibition against ownership by physicians in an MSO.

I checked with Sandy we decided that, to avoid confusion, I would try and schedule a conference call with the three owners of MCB. However, Dr. Mispireta was unwilling to

HLS:277431.1:10/8/1999: 6:09 PM

Memo to File re Luis Mispireta, M.D.
October 11, 1999
Page 2

participate in a conference call. In that same call, I confirmed we are not representing Dr
Mispireta in his dealings with MCB. I then had three separate identical calls with each of the Dr
Mispireta, Dr. Corso and Bill Beam. Lydia was on speaker with me on the call with Dr.
Mispireta and Janet DiAntonio was on the calls with Dr. Corso and Bill Beam. In each call, I
conveyed the following: Our only prior advice to PSS was that, if the billing company was
charging on a percentage basis, it should not do the coding. As to MCB, there is no restriction
on physicians forming an MSO for their own practice. Also, our understanding is that MCB and
its affiliates do not provide any Stark "designated health services." If the MSO is to provide
management and billing services to other practices, we believe it should not charge fees on a
volume or value sensitive basis. Thus, concerns relate to the structure of the ownership and
contract arrangements, not the mere fact of ownership.