IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(NORTHERN DIVISION)

| | |
|---|---|
| MCB MANAGEMENT SERVICES, LLC, et al., | ) ) ) |
| Plaintiffs/ Counterclaim Defendants, | ) ) ) ) ) |
| v. | ) )  CIVIL NO.: AMD 02 CV 525 |
| WASHINGTON REGIONAL CARDIAC SURGERY, P.C., | ) ) ) |
| Defendant/ Counterclaim Plaintiff. | ) ) ) ) |
| WASHINGTON REGIONAL CARDIAC SURGERY, P.C., | ) ) ) |
| Counterclaim Plaintiff, | ) ) ) |
| v. | ) ) |
| WILLIAM BEAM and CHARLES ALBERT ZORN, III, | ) ) ) |
| Counterclaim Defendants. | ) ) ) |

**DEFENDANT/COUNTERCLAIM PLAINTIFF'S
MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Turning a blind eye to clear evidence of fraud and a deaf ear to the Court's rulings and statements during the May 23, 2003 hearing that granted Washington Regional Cardiac Surgery, P.C.'s ("WRCS") motion for leave to add claims against counter-claim defendants Mr. William Beam ("Mr. Beam") and Mr. Charles Albert Zorn, III ("Mr. Zorn") (collectively, the "Individual Defendants"), the Individual Defendants now move to dismiss these very claims or, in the alternative, for a more definite statement. The Court should deny the motion because, as the Court itself already has observed, there are more than sufficient allegations – indeed, there is more than enough evidence – that the Individual Defendants committed fraud.

As the Court is aware, WRCS entered into two agreements – a management agreement and a billing agreement – with plaintiffs MCB Management Services, LLC ("MCB") and Physician Support Services, LLC's ("PSS") (collectively, "Plaintiffs"). The Individual Defendants are directors, officers and the controlling shareholders of MCB and PSS. WRCS's counterclaims allege that MCB, PSS and the Individual Defendants defrauded WRCS and breached the parties' agreements by wrongfully diverting WRCS's payments and wrongfully using them for MCB and PSS's own use, and for the use of the Individual Defendants in the form of, among other things, salaries, bonuses, fringe benefits and profit distributions.

Not only are WRCS's allegations of fraud against the Individual Defendants stated with particularity, the evidence supporting these allegations is

\\\BA - 80667/0003 - 160201 v1

compelling.  WRCS has specifically alleged that Mr. Beam and Mr. Zorn <u>themselves</u> made false representations to WRCS that MCB and PSS would not profit from their contracts with WRCS and that any savings resulting from reductions in WRCS's overhead expenses would be returned to WRCS.  WRCS also has specifically alleged that Mr. Beam and Mr. Zorn perpetrated a fraud by repeating these false statements and preparing false documents and financial statements, while at the same time secretly diverting WRCS's payments for their personal benefit.

WRCS's specific allegations are amply supported by evidence.  Mr. Beam made a PowerPoint presentation to WRCS that plainly stated that MCB would "[m]ake no profits off GMCPA." (Exh. 3 at 0016).  <u>1/</u>  Mr. Beam also sent financial statements to WRCS upon which he wrote "[t]his is what you pay us to pay out as OH expenses," and "pass through payments," which were designed to perpetuate the fraud and WRCS's belief that its payments to MCB were being used only for WRCS's overhead expenses.  (Exhs. 4 and 5).  Further, Mr. Beam revealed his fraudulent intent (and, indeed, his malice) when he told Mr. Lawrence Sherman ("Mr. Sherman"), the former PSS President and 1% owner, that Mr. Beam's goal was to "f**k the docs before they f**k you."  (Exh. 6) (excerpt of deposition testimony of Mr. Lawrence Sherman).

Mr. Zorn, for his part, specifically and falsely informed one of the WRCS doctors that all savings in WRCS's overhead expenses "of course have been

---

<u>1/</u>    GMCPA stands for Garcia, Mispireta, Corso and Pfister Associates, the former name of WRCS.

- 3 -

passed along to WRCS through reductions in the Overhead Expense." (Exh. 7) (email from Mr. Zorn). Mr. Zorn also created and presented to WRCS financial statements that falsely represented that MCB did not profit from its contract with WRCS. In one example, Mr. Zorn brazenly misrepresented that MCB <u>lost</u> $33,485.97 on the WRCS contract in 2000 (Exh. 8), while his secret internal set of books, not seen by WRCS until discovery in this litigation, revealed that MCB actually made <u>$922,584.86</u> in 2000 from the contract with WRCS. (Exh. 9).

       These specific allegations – and the concrete evidence that supports them – presumably are the very reasons why the Court granted WRCS leave to amend its counterclaims and assert claims against the Individual Defendants. The Court granted WRCS leave to amend its counterclaims after careful consideration of the substance of the claims against the Individual Defendants, including the allegations themselves and the evidence supporting them. The Court discussed its reasoning at the May 23, 2003 hearing and no doubt concluded that the allegations stated claims upon which relief could be granted; otherwise, the Court surely would not have granted leave to add these claims against the Individual Defendants.

       The Individual Defendants now argue that the allegations and evidence are inadequate as a matter of law when it is clear that the Court has already concluded otherwise. After a detailed review of the documentary evidence, the Court clearly expressed its view that there is more than enough evidence supporting WRCS's claims against Mr. Beam and Mr. Zorn personally, observing:

Now, having said all of that, having said all of that, if I were to weigh the evidence in this case, as I believe a reasonable fact finder will weigh and evaluate the evidence in this case, if the evidence were to come in, in the manner in which it is projected in your summary judgment papers, <u>I would be very surprised, very surprised if the plaintiffs prevailed.</u>

To the contrary, it seems to me a reasonable fact finder, if the evidence were to come in as projected in the summary judgment papers, <u>a reasonable fact finder is very likely to conclude that the plaintiffs did wrong here.</u>  And I believe this so strongly that I am very much not inclined even to dismiss the fraud claim.

I understand full well that fraud is to be proven under Maryland law by clear and convincing evidence, and I understand full well that it is a – I suppose it's not a disfavored claim in the law, but it's a serious claim.  And <u>claims of fraud should never be made lightly.  I don't think they've been made lightly in this case.</u>

And I have to say that while it may be close, it seems to me that the counter-plaintiff under the circumstances disclosed in this record could reasonably persuade a reasonable fact finder, depending on how the fact finder draws the inferences, makes the credible assessments, and examines the motivations of Mr. Beam, <u>a reasonable fact finder I think could conclude that plaintiff – that counter-plaintiff has established fraud by clear and convincing evidence.  That's my preliminary view.</u>

(Exh. 1 at 3-4) (excerpt of transcript of May 23, 2003 hearing) (emphasis added).

The Individual Defendants' motion flies in the face of the Court's already reasoned consideration of the merits of these claims and the Court's ruling granting WRCS leave to amend.  The Court conducted a careful review of the allegations of the proposed counterclaims before permitting WRCS to assert them and ruled that they were permissible.  Further, the assertion by the Individual

- 5 -

\\\BA - 80667/0003 - 160201 v1

Defendants that any interpretation of the central contract other than their own is "idiotic" is untenable and nothing more than attack on Court's own view of the case and the evidence to be presented to a jury. For the reasons that the Court itself has identified, the allegations against the Individual Defendants are specific and the evidence compelling. The Court should deny the motion to dismiss or for a more particular statement and the case should proceed.

## ARGUMENT

### I. WRCS's Fraud Claims are Plead with Specificity, State Claims for Fraud, and are Amply Supported by Evidence.

In reviewing selected paragraphs of the counterclaims and arguing that WRCS's allegations are both insufficient to state a claim under Rule 12(b) and not sufficiently particular under Rule 9(b), the Individual Defendants make two critical errors. First, they ignore WRCS's specific allegations of fraud and the convincing evidence supporting them. Second, they ignore findings that the Court has already made. 2/

First, the Individual Defendants argue that the claims should be dismissed because WRCS has not specified the "time; place and nature of the fraud." (Mem. in Supp. of Mot. to Dismiss at 3). This is simply not true. The nature of the fraud is clear: MCB, PSS, and the Individual Defendants represented

---

2/ With respect to Count IV, which asserts a claim of negligent misrepresentation against Mr. Beam, Rule 9(b) does not apply and Mr. Beam has not filed a motion to dismiss under Rule 12(b). Accordingly, there is no motion to dismiss pending as to Count IV and Mr. Beam is in default because he has not filed an answer to this claim.

to WRCS that they would use WRCS's payments only to pay for WRCS's own overhead expenses.  In direct conflict with this representation, they instead used the payments for their own benefit.  This allegation complies with Rule 8(e)(1)'s admonition that the averments in a pleading be "simple, concise and direct" and is more than sufficient to satisfy Rule 9(b)'s particularity requirement.  The amended counterclaims provide the following particular allegations describing the nature of the fraud:

- "Mr. Beam represented that the MSO (which became MCB) "would not earn a profit from its services for WRCS.  Instead, [Mr. Beam] represented that the MSO would use [] the highly regarded WRCS name and reputation to obtain management contract with other medical practices, from which [MCB] would profit." (Exh. 2, Am. Answer to Compl. and Counterclaims ¶ 13).

- As the parties' relationship continued, Mr. Beam represented that "MCB had not in the past and would not in the future earn a profit from its dealings with WRCS," specifically referring to WRCS's payments to MCB as "pass through" payments of WRCS's own overhead expenses.  (*Id.* ¶ 34).

- "Mr. Zorn provided monthly financial presentations to WRCS that intentionally did not disclose how MCB, PSS, Mr. Beam and Mr. Zorn used WRCS's monthly payments . . . ."  (*Id.* ¶ 42).

- "Mr. Beam and Mr. Zorn personally provided WRCS with financial information that WRCS now knows to have been intentionally false and designed to mislead WRCS into believing that MR. Beam and Mr. Zorn were using WRCS's monthly payments only to pay WRCS's overhead expenses when, in fact, large portions of the payments were used for other payments, including Mr. Beam's and Mr. Zorn's personal retention for themselves of hundreds of thousands of dollars from WRCS's payments . . . ." (*Id.* ¶ 43).

- "Mr. Beam and Mr. Zorn also intentionally made misleading and false statements . . . that MCB was not deriving a profit from WRCS, that MCB, Mr. Beam and Mr. Zorn only used WRCS's monthly payments to pay for WRCS's overhead expenses, and

- 7 -

>that all savings from reductions in WRCS's overhead expenses were being returned to WRCS." (*Id.* ¶ 44).

Likewise, the amended counterclaims make clear that the fraud occurred both before the formation of MCB as well as after, continuing throughout the performance of the parties' 1999 agreements. (*Id.* ¶¶ 13-15, 34).

The Individual Defendants' argument also disregards the Court's findings at the May 23, 2003 hearing, which both Mr. Beam and Mr. Zorn attended. After reviewing the summary judgment papers and exhibits, the Court concluded that "a reasonable fact finder I think could conclude that plaintiff – that counter-plaintiff has established fraud by clear and convincing evidence." (Exh. 1 at 4). The Court not only made this finding regarding MCB and PSS, but regarding the <u>Individual Defendants</u>. (*Id.* at 76) ("But it is not at all unreasonable to believe that a reasonable fact finder could conclude that <u>Mr. Zorn</u> and <u>Mr. Beam</u>, though honorable men, committed fraud in this case.") (emphasis added). This finding alone, which was based on a summary judgment record in which MCB and PSS had full opportunity to dispute the evidence, demonstrates that WRCS's counterclaims more than adequately state a claim as a matter of law. 3/

Further, the Court's observations at the hearing are directly at odds with and specifically preclude the individual, factual arguments littered throughout

---

3/     At the May 23, 2003 hearing, the Court considered WRCS's claims against MCB and PSS. Because the facts underlying those claims are the same facts underlying the claims against the Individual Defendants, the Court's reasoning is equally applicable to the claims against the Individual Defendants at issue here.

the Individual Defendants' memorandum.  For example, the Individual Defendants argue that it is "idiotic" to interpret the 1999 agreement between MCB and WRCS as prohibiting MCB from profiting from their relationship.  Yet, the Court itself specifically found that Mr. Beam's desire to use the name and reputation of the WRCS practice to market his new management company not only created a genuine issue of material fact, but was completely logical:

> On the breach of contract issues, I've already said I think the great weight of the evidence, and I'm perfectly frank, the greater weight of the evidence of the evidence, although there is a certain attractiveness to the argument presented on behalf of the plaintiffs here, they were going to work for free?
>
> Well, yes.  Yes.  That was the idea.  In return for building up a business, growing equity, and commanding the medical practice market, management market in the Baltimore Washington area.  That's right.
>
> * * *
>
> But he wanted to be an entrepreneur, and the doctors gave him that opportunity. I don't think a reasonable fact finder's going to conclude that the doctors intended to contribute hundreds of thousands of dollars to Mr. Beam's effort to build his own company.  I think that was true in 1998.  And it was certainly true, or so a reasonable fact finder could conclude, after 1999 when he was the – what, 90 percent or 70 percent owner of the company.

(Exh. 1 at 77-78).  There is simply no basis upon which to dismiss the claims against the Individual Defendants on the ground that WRCS's allegations are "idiotic" when the Court itself has specifically found that the "greater weight of the evidence" supports them.

\\\BA - 80667/0003 - 160201 v1

This is not a case in its initial stages in which the allegations have not been fully explored. Instead, the case has been pending for some time, the Individual Defendants have been actively involved in the case from the outset (even attending some of the depositions), and there has been ample discovery conducted. In this setting, the Court should treat WRCS's summary judgment filings as *de facto* supplements to WRCS's allegations for purposes of satisfying Rule 9(b). *See Bonilla v. Trebol Motors Corp.* 150 F.3d 77, 81 (1st Cir. 1998) (citing cases and noting that although complaint arguably was not sufficiently specific, opposition to motion for summary judgment, including evidence cited in support, gave sufficient notice of fraudulent acts and that "an amendment to the complaint to restate this information would be silly"). The Court should be disinclined to grant a motion under Rule 9(b) when the defendant is on notice of the factual allegations and when the plaintiff had sufficient information prior to discovery. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Both requirements are met here.

There is highly persuasive, specific, documentary evidence supporting WRCS's allegations, including its fraud claim. The Court, the parties and the Individual Defendants are familiar with this evidence, all of which was detailed in WRCS's summary judgment motion, and much of which is from their very own mouths and hands:

- Mr. Beam stated in a PowerPoint presentation to WRCS that MCB would "[m]ake no profits off GMCPA." (Exh. 3 at 0016).

- Mr. Beam wrote in a memo to the WRCS doctors that they would not have to pay for Mr. Zorn's salary because "[o]nce on the MCB payroll, his salary becomes my responsibility." (Exh. 10).

- Mr. Beam specifically wrote that WRCS's payments to MCB were "pass through payments" and that the payments were "what you pay us to pay out as OH expenses." (Exhs. 4, 5).

- Mr. Zorn falsely represented in an email to a WRCS doctor that all "savings in expenses [] of course have been passed along to WRCS." (Exh. 7).

- Mr. Zorn prepared financial statements for WRCS that Raymond J. Peroutka, Jr., WRCS's accounting expert, found were "misleading" because they "improperly recorded and distorted expense items . . . to make them appear as expenses of WRCS when they were not." (Exh. 11 at 7).

- The financial statements that Mr. Zorn prepared for WRCS falsely represented that MCB made no profits from its contract with WRCS, including a non-existent loss of $33,485.97 on the WRCS contract in 2000. (Exh. 8). Mr. Zorn's internal, second set of books revealed that MCB made $922,584.86 in 2000 from the contract with WRCS. (Exh. 9).

- Mr. Beam made threatening telephone calls to the WRCS doctors' administrative assistants when a WRCS doctor asked for specific information about how Mr. Beam and Mr. Zorn was using WRCS's payments. (Exh. 12) (excerpt of deposition testimony of Nancy Kershner); (Exh. 13) (excerpt of deposition testimony of Janice Wolf).

- Mr. Beam's self-declared intention was to "f**k the docs before they f**k you." (Exh. 6) (excerpt of deposition testimony of Mr. Lawrence Sherman).

The Individual Defendants further complain that WRCS has not alleged with sufficient particularity the "benefit" that they personally received from the fraud. (Mem. in Supp. of Mot. to Dismiss at 11). Putting aside whether Rule 9 even requires this information, as they already know, Mr. Beam's and Mr. Zorn's

total compensation for 2000-01 – taken almost entirely from WRCS's monthly payments – was almost $1.3 million for Mr. Beam almost $800,000 for Mr. Zorn. (Exhs. 14-18) (payroll registers for Mr. Beam and Mr. Zorn and deposition testimony of Mr. Zorn regarding ownership interests and distributions). Mr. Beam and Mr. Zorn also used WRCS's payments to lease automobiles, a BMW 740iL for Mr. Beam and a Dodge Durango for Mr. Zorn. (Exhs. 19, 20) (car reimbursement forms).

Rule 9(b) has four purposes: It ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of, it protects defendants from frivolous suits, it eliminates fraud actions in which all the facts are learned after discovery, and it protects defendants from harm to their goodwill and reputation. *See Harrison*, 176 F.3d at 784. None of these factors support the motion to dismiss. First, the Individual Defendants – having directed this litigation as the owners of MCB and PSS and having attended multiple depositions, the settlement conference before Judge Grimm and the summary judgment hearing – have received unambiguous notice of the conduct at issue. Second, the Court already has decided that these are not frivolous claims. Third, this is not a case in which all facts are learned after discovery. Although WRCS learned important facts during discovery – such as the second set of books and Mr. Beam's comments to Mr. Sherman that he wanted to "f**k the docs" – WRCS had substantial evidence of fraud before filing its counterclaims. It was this evidence of fraud that convinced WRCS to terminate the agreements with MCB and

PSS in the first place. Finally, considering the Court's careful review of the claims before allowing WRCS to assert them, and the significant evidence of fraud, there is no reason to believe that any <u>unjust or undue</u> harm to the reputation of the Individual Defendants would result from the amended counterclaims.

All of this evidence, which the Court reviewed and relied on in denying MCB's and PSS's motion for summary judgment and, more importantly, in granting WRCS leave to assert claims against Mr. Beam and Mr. Zorn personally, demonstrates that not only has WRCS adequately plead its causes of action, including those sounding in fraud, but that the weight of the evidence <u>supports</u> WRCS's claims.

**II.   <u>WRCS Adequately States a Claim for Unjust Enrichment.</u>**

The Individual Defendants wrongly argue that WRCS's claim for unjust enrichment against them should be dismissed because WRCS has not alleged sufficient facts to warrant veil piercing. This argument completely misses the mark because veil piercing is not required to state a claim for unjust enrichment against the Individual Defendants. WRCS does not seek to hold Mr. Beam and Mr. Zorn liable merely for acts of the corporation, but rather seek to hold Mr. Beam and Mr. Zorn liable <u>for their own acts of fraud</u>. As WRCS stated in its motion for leave to amend its counterclaims to assert claims against the Individual Defendants, Maryland law holds a corporation's officers and directors personally liable for their own fraudulent acts, regardless of whether they commit the acts within the scope of their employment by the corporation. *See Steigerwald v. Bradley*, 229 F. Supp. 2d

- 13 -

445, 450-51 (D. Md. 2002) (Blake, J.) (allowing claims against owner and officer of corporation who "made all of the allegedly false representations"); *Pontier v. Pontier*, 165 B.R. 797, 799 (Bankr. D. Md. 1994) ("A corporate office, director or employee . . . may nevertheless be held personally liable for his or her own fraudulent conduct committed on behalf of the corporation which causes injury to another."); *Tedrow v. Deskin*, 265 Md. 546, 550-51 (1972) ("The general rule is that corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body."). Because Mr. Beam and Mr. Zorn <u>themselves</u> committed the acts of fraud, they may be held liable and, whether or not the corporate veil can be pierced, is wholly irrelevant.

   The Individual Defendants' argument that the existence of the MCB agreement bars the equitable unjust enrichment claim similarly fails. Although there are circumstances in which a party might not be permitted recover on a quasi-contract claim when a contract expressly governs the subject matter in dispute, the key is that the contract must expressly govern the issue. For example, in the Maryland Court of Appeals decision cited by and relied upon by the Individual Defendants, there was no material dispute of fact, and the court concluded that the area in dispute was "covered specifically by several valid and enforceable provisions of the written contract between the parties." *See County Commissioners of Caroline Co. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 100 (2000).

\\\BA - 80667/0003 - 160201 v1

The Court here already has determined that there is a genuine question of material fact regarding the parties' contracts. (Exh. 1 at 75) ("The[re] are genuine disputes of material fact all over this case."). And, although WRCS respectfully disagrees, the Court has expressed the view that the contracts could be interpreted as not directly addressing the question of whether and, if so, how much profit the counterclaim defendants were entitled to retain. (Exh. 1 at 3) ("The agreement of the parties seems to be about, I don't know, anywhere from 40 to 70 percent spelled out in writing. Another ten to 20 percent sort of oral statements and understandings, and then whatever's left from my math was sort of existent only in the heads of the individual participants."); (Exh. 1 at 17) ("I said it's not a question of ambiguity. It's a question of incompleteness. It's incompleteness.").

The jury could conclude that MCB and PSS breached the agreements, a circumstance that would allow recovery under quasi-contract theories. *See J. Roland Dashiell & Sons*, 358 Md. at 100 (unjust enrichment claims are allowed when there has been a breach of contract). Alternatively, the jury might conclude that the contract did not address MCB's use of the payments from WRCS and therefore that MCB did not breach the agreement, but nevertheless that WRCS conferred upon MCB, PSS, Mr. Beam and/or Mr. Zorn benefits that they could not equitably retain without paying for the value of the benefits. *See id.* (unjust enrichment claims are allowed when the express contract does not fully address subject matter). In light of the Court's holding that there are genuine questions of material fact regarding the terms of the parties' contracts, there are a number of

\\\BA - 80667/0003 - 160201 v1

scenarios in which the jury could properly find for WRCS on its unjust enrichment claim.

## CONCLUSION

For these reasons, WRCS respectfully asks that the Court deny the Individual Defendants' motion to dismiss or, in the alternative, for a more definite statement.

Dated:  August 11, 2003                              Respectfully submitted,

_____/s/_____
Mark D. Gately (F. B. No. 00134)
Steven F. Barley (F. B. No.  10049)
Robert A. Cohen (F. B. No.  25278)
HOGAN & HARTSON L.L.P.
111 South Calvert Street
Suite 1600
Baltimore, Maryland 21202
(410) 659-2700
(410) 539-6981 (fax)

*Attorneys for Washington Regional Cardiac Surgery, P.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of August, 2003, a copy of Defendant/Counterclaim Plaintiff's Memorandum in Opposition to Motion to Dismiss or, in the Alternative, for a More Definite Statement, and supporting exhibits were hand-delivered to:

>Paul-Michael Sweeney
>Carrie B. Weinfeld
>Linowes and Blocher LLP
>7200 Wisconsin Ave Ste 800
>Bethesda, MD 20814

/s/
Robert A. Cohen

\\\BA - 80667/0003 - 160201 v1