```
00001
 1               •  IN THE UNITED STATES DISTRICT COURT
 2           FOR THE DISTRICT OF MARYLAND/NORTHERN DIVISION
 3
 4   MCB MANAGEMENT SERVICES, LLC
 5             PLAINTIFF           AMD 02-525
 6             VS.
 7   WASHINGTON REGIONAL CARDIAC SURGERY
 8             DEFENDANT
 9   _____/    May 23, 2003
10
11              TRANSCRIPT OF MOTIONS HEARING
            BEFORE THE HONORABLE ANDRE M. DAVIS,
12              UNITED STATES DISTRICT JUDGE
13
14   APPEARANCES:
15   On behalf of the Plaintiffs:
16
17   Gerard P. Martin, Esquire
     Steven F. Wrobel, Esquire
18
19   On behalf of the Defendants:
20   Mark D. Gately, Esquire
     Steven F. Barley, Esquire
21
22
     Reported by:
23
24
     Jacqueline Sovich, CRS, RMR
25   Official Court Reporter
```

```
00003
   1    out the rights and obligations of the parties, was done on
   2    the cheap by apparently Mr. Beam and doctor -- I apologize,
   3    I'm going to mispronounce the name, I'm afraid, Mispireta?
   4              MR. GATELY:  Mispireta.
   5              THE COURT:  I apologize.  And or Dr. Corso.
   6              In any event, who knows what they had in mind?  Who
   7    in the world knows?
   8              Each side has reasonable arguments in support of
   9    your interpretation of the agreements.  And so I'll hear
  10    you, but it just seems clear to me there's no chance of
  11    summary judgment.
  12              The agreement of the parties seems to be about, I
  13    don't know, anywhere from 40 to 70 percent spelled out in
  14    writing.  Another ten to 20 percent sort of oral statements
  15    and understandings, and then whatever's left from my math
  16    was sort of existent only in the heads of the individual
  17    participants.
  18              Now, having said all of that, having said all of
  19    that, if I were to weigh the evidence in this case, as I
  20    believe a reasonable fact finder will weigh and evaluate the
  21    evidence in this case, if the evidence were to come in, in
  22    the manner in which it is projected in your summary judgment
  23    papers, I would be very surprised, very surprised if the
  24    plaintiffs prevailed.
  25              To the contrary, it seems to me a reasonable fact
```

```
00004
   1   finder, if the evidence were to come in as projected in the
   2   summary judgment papers, a reasonable fact finder is very
   3   likely to conclude that the plaintiffs did wrong here.  And
   4   I believe this so strongly that I am very much not inclined
   5   even to dismiss the fraud claim.
   6           I understand full well that fraud is to be proven
   7   under Maryland law by clear and convincing evidence, and I
   8   understand full well that it is a -- I suppose it's not a
   9   disfavored claim in the law, but it's a serious claim.  And
  10   claims of fraud should never be made lightly.  I don't think
  11   they've been made lightly in this case.
  12           And I have to say that while it may be close, it
  13   seems to me that the counter-plaintiff under the
  14   circumstances disclosed in this record could reasonably
  15   persuade a reasonable fact finder, depending on how the fact
  16   finder draws the inferences, makes the credible assessments,
  17   and examines the motivations of Mr. Beam, a reasonable fact
  18   finder I think could conclude that plaintiff -- that
  19   counter-plaintiff has established fraud by clear and
  20   convincing evidence.  That's my preliminary view.
  21           Now, on the motion to amend, it is late.  But I
  22   note that discovery isn't concluded, apparently, although
  23   the scheduling order called for discovery to be concluded,
  24   and so I need to hear, obviously, the counter-plaintiff's
  25   reasons for the delay.  I think I know what they are, but
```

```
00017
   1   right?  In fact, I said exactly the opposite.  Not the
   2   opposite.  I said it's not a question of ambiguity.  It's a
   3   question of incompleteness.  It's incompleteness.
   4          And the completeness, the contract is completed
   5   here by, as I said, the oral understandings between the
   6   parties, the course of dealing, and then there's a piece of
   7   it that was in Mr. Beam's head, Dr. Corso's head, and I
   8   don't know what a jury would do with all of that.
   9          Now, I grant you there is what purports to be an
  10   integration clause here.  But it's clear as the nose on our
  11   faces that integration clause doesn't mean a thing.
  12   Apparently, one of these gentlemen, I take it it was Mr.
  13   Beam, I don't know, got hold of some form somewhere, and
  14   negotiated with the doctor.
  15          MR. MARTIN:  So you know where it came from, it's
  16   based on '98 contract.  The '98 draft was drafted by Dr.
  17   Mispireta's daughter, who is a lawyer.
  18          THE COURT:  I didn't mean to insult anybody.
  19          MR. MARTIN:  Drafted by Dr. Mispireta's daughter,
  20   who is a lawyer.  What happened in 1999, Dr. Corso and Zorn
  21   got together and made changes to this agreement.  He took
  22   out --
  23          THE COURT:  I didn't leave Dr. Corso out of my
  24   observations.
  25          MR. MARTIN:  They took out from the '98 contract
```

```
00075
  1    ambiguity and extrinsic ambiguity back when the defendant
  2    filed their early motion to dismiss or cap damages, or
  3    whatever it was, not too much in this case has changed.  Not
  4    too much in this case has changed.
  5            You had a couple lay people, very bright, very
  6    capable, very honorable lay people who made the
  7    extraordinary mistake of sitting down themselves with some
  8    apparent legal help, I guess, to craft in a simple way a
  9    very complicated arrangement.
 10            And this is what happens, almost invariably.  Not
 11    invariably, but almost invariably, this is what happens.
 12            So I'm going to grant the motion to amend.  I'm
 13    going to deny the motion for summary judgment.  They are
 14    genuine disputes of material fact all over this case.  I can
 15    go through and cherrypick, as I say, a negligent
 16    misrepresentation claim. I don't see that going to the jury,
 17    if in fact we actually have to try the case.
 18            Quantum merit case, I don't see that going to the
 19    jury if we actually have to try the case.  And frankly, I
 20    don't know what's going to happen with the fraud claim
 21    against the individual defendants.  Excuse me.  The
 22    individual counter-defendants.  But I'm going to allow that
 23    into the case.
 24            Obviously, there's going to be a delay.  Mr. Martin
 25    I think is absolutely correct.  Mr. Beam and Mr. Zorn are
```

```
00076
  1   going to have to consult independent counsel.  And I mean
  2   independent, not just independent from Mr. Martin, but each
  3   of them will have to consult independent counsel.
  4         I don't take fraud claims lightly.  I throw out far
  5   more of them than I leave in.  And it is the compelling
  6   nature, when all of the facts and circumstances are regarded
  7   in favor of the counter-plaintiff as they must be, at this
  8   stage, now talking about the fraud claim against the
  9   corporate counter-defendants, while it is a very close case,
 10   it is a very close case, I think it's close enough.  I think
 11   it's close enough, I've referred to the old saw "badges of
 12   fraud." And they are all over this case.
 13         And Mr. Martin has done an excellent job here
 14   today, but the excellent job he's done is jury argument.
 15   Those are jury arguments.  Those are jury considerations, as
 16   I said two hours ago, almost, an hour and a half ago when I
 17   came out.
 18         I'm not weighing the evidence here.  That's not my
 19   role.  That's not my job in summary judgment.  But as I
 20   thought about it, and of course in a case like this one, we
 21   would use special interrogatories and get very, very
 22   specific questions for the jury as to their findings on the
 23   facts.  But it is not at all unreasonable to believe that a
 24   reasonable fact finder could conclude that Mr. Zorn and Mr.
 25   Beam, though honorable men, committed fraud in this case.
```

```
00077
  1              That is not, based on my review of the record,
  2    drawing all inferences in favor of the counter-plaintiff,
  3    that is not a verdict that I would feel compelled to toss
  4    up.  I think I would have to respect that verdict.
  5              On the breach of contract issues, I've already said
  6    I think the great weight of the evidence, and I'm perfectly
  7    frank, the greater weight of the evidence of the evidence,
  8    although there is a certain attractiveness to the argument
  9    presented on behalf of the plaintiffs here, they were going
 10    to work for free?
 11              Well, yes.  Yes.  That was the idea.  In return for
 12    building up a business, growing equity, and commanding the
 13    medical practice market, management market in the Baltimore
 14    Washington area.  That's right.
 15              Mr. Beam didn't make any financial investment in
 16    this undertaking.  That's not to diminish or belittle his
 17    contribution, it was clearly significant.
 18              Clearly, these doctors thought the world of him.
 19    You don't give a $250,000 employment contract and put
 20    somebody in charge of your ten million dollar medical
 21    practice if you don't think they are just the greatest.
 22    He clearly is the greatest.
 23              But he wanted to be an entrepreneur, and the
 24    doctors gave him that opportunity.  I don't think a
 25    reasonable fact finder's going to conclude that the doctors
```

```
00078
 1  intended to contribute hundreds of thousands of dollars to
 2  Mr. Beam's effort to build his own company.  I think that
 3  was true in 1998.  And it was certainly true, or so a
 4  reasonable fact finder could conclude, after 1999 when he
 5  was the -- what, 90 percent or 70 percent owner of the
 6  company.
 7          It runs counter to common sense and common
 8  understanding.  But these are all jury questions.
 9          So for the reasons stated on the record, the Court
10  will enter an order denying summary judgment motion all
11  around, granting the motion to amend and deeming -- well --
12          MR. GATELY:  I was just going to ask that.
13          THE COURT:  You need to serve the individuals, and
14  you can speak to Mr. Martin.  Maybe the one thing he will do
15  is accept service on behalf of them and avoid that
16  difficulty.
17          But, in any event, they'll be -- Mr. Beam and Mr.
18  Zorn, of course, will be given all the time necessary needed
19  to consult with counsel, retain counsel.
20          MR. GATELY:  We would never object, anyway.
21          Your Honor, I know that the local rule provides
22  that the proposed amended complaint is deemed filed.  We had
23  attached it as an exhibit to the memo.  I always find
24  cleaner just to refile an amended complaint if that's okay
25  with you and Gerry.
```